## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NOVA TECH LTD, CYNTHIA PETION, EDDY PETION, MARTIN ZIZI, JAMES CORBETT, CORRIE SAMPSON, DAPILINU DUNBAR, JOHN GAROFANO, MARSHA HADLEY,<br><br>Defendants. | Civ. Action No. 1:24-cv-23058<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The Securities and Exchange Commission ("**SEC**") files this Complaint against Defendants Nova Tech Ltd. ("**NovaTech**"), Cynthia Petion, Eddy Petion, Martin Zizi ("**Zizi**"), James Corbett ("**Corbett**"), Corrie Sampson ("**Sampson**"), Dapilinu Dunbar ("**Dunbar**"), John Garofano ("**Garofano**"), and Marsha Hadley ("**Hadley**") (collectively, "**Defendants**"), and alleges as follows:

### I.     SUMMARY

1.     From June 2019 to approximately May 2023, Cynthia Petion and Eddy Petion (together, the "**Petions**") operated a fraudulent crypto trading investment and pyramid scheme primarily through NovaTech, a company registered in St. Vincent and the Grenadines. The Petions used a multi-level marketing ("**MLM**") structure to raise crypto assets worth more than $650 million from over 200,000 investors in the United States and abroad, including many in the Haitian-American community.

1

2.      In solicitations made through its public website, social media, and network of promoters, NovaTech claimed to pool investors' crypto assets and trade them on the crypto asset and foreign currency markets. NovaTech promised to pay profits to investors from this trading activity on a weekly basis. NovaTech purportedly never posted a weekly trading loss and, from 2019 to 2023, reported average returns of 2–3% *per week*.

3.      In reality, NovaTech appears to have traded only a small fraction of investor assets, it suffered significant trading losses, and it had no other known sources of revenues besides investor deposits. In other words, NovaTech was a pyramid scheme that depended on the recruitment of new investors or new investments from existing investors to fund its enterprise.

4.      The Petions misappropriated investor assets for unauthorized purposes, including transferring millions of dollars of commingled investor assets to themselves. On information and belief, they also used investor funds to make payments to existing investors and commission payments to promoters.

5.      In promoting NovaTech, the Petions also made a barrage of false and misleading statements relating to NovaTech's use of investors assets for trading, the profitability of its trading, its status as an alleged "registered hedge fund," and the purported safety and security of the investment. The scheme collapsed in or around May 2023, after investors experienced withdrawal delays and regulators in several U.S. states and Canadian provinces took action against, or issued fraud warnings about, NovaTech and the Petions. As NovaTech collapsed, most investors were unable to withdraw their investments, resulting in substantial losses.

6.      Defendants each marketed the NovaTech investment to investors who were inexperienced in crypto assets and who wanted to participate in the crypto markets. Certain

Defendants targeted affinity groups, in particular the Haitian-American community, and used religious overtones and appeals to financial freedom and independence to solicit investors.

7.      Defendants Zizi, Corbett, Sampson, Dunbar, Garofano, and Hadley (collectively, the "**Promoter Defendants**") were instrumental in offering, marketing, and distributing the NovaTech investment. The Promoter Defendants held themselves out as "leaders" and rose to the highest ranks of NovaTech's MLM program. They did so by recruiting, developing, and maintaining a wide network of "downline" investors, many of whom became recruiters themselves and brought in additional investors. The Promoter Defendants received substantial commission payments from NovaTech for recruiting investors into their downlines.

8.      Certain Promoter Defendants—Zizi, Corbett, Dunbar, and Sampson—became aware of actions against NovaTech by regulators in the United States and Canada, investors experiencing withdrawal delays, NovaTech suspending withdrawals, and other red flags that raised questions about the legitimacy of NovaTech and the legality of its offering and selling activities. Nevertheless, these Promoter Defendants continued to promote NovaTech, recruit investors, and operate their MLM networks in the face of these red flags. They also actively downplayed the red flags to prospective investors and downline promoters.

9.      By engaging in the acts and conduct alleged herein, Defendants NovaTech and the Petitions violated the antifraud and securities-registration provisions of the federal securities laws, Defendants Zizi, Corbett, Dunbar, and Sampson violated the antifraud, securities-registration, and broker-registration provisions of the federal securities laws, and Defendants Garofano and Hadley violated the securities-registration and broker-registration provisions of the federal securities laws. In the interest of protecting the public from further violations and enforcing the federal securities laws, the SEC brings this action seeking permanent injunctive relief, disgorgement of ill-gotten

gains plus prejudgment interest, civil penalties, and all other equitable and ancillary relief the Court deems necessary and proper.

## II.        JURISDICTION AND VENUE

10.     The SEC brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act of 1933 ("**Securities Act**") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("**Exchange Act**") [15 U.S.C. §§ 78u(d) and 78u(e)].

11.     This Court has jurisdiction over this action pursuant to Sections 20 and 22(a) of the Securities Act [15 U.S.C. §§ 77t and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

12.     Defendants, directly or indirectly, made use of the mails or means or instrumentalities of interstate commerce in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

13.     Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. At least one Defendant, Defendant Dunbar, is found, is an inhabitant, and transacts business in this District. In addition, certain acts, practices, transactions, and courses of business constituting violations of the securities laws alleged herein occurred within this District, and the offer or sale of securities at issue in this case took place in this District. Prior to approximately May 2022, the Petions are believed to have resided in this District, wherefrom, on information and belief, they engaged in certain acts, practices, transactions, and courses of business constituting violations of the federal securities laws alleged in this Complaint.

### III.   **DEFENDANTS**

14.     Defendant Nova Tech Ltd. is a company registered and formed under the laws of St. Vincent and the Grenadines in September 2019. According to its Disclosure Document dated August 15, 2019 (the "**Disclosure Document**") that was provided to investors, NovaTech is and/or was responsible for "the management of Cryptocurrency trading accounts for qualified investors" within the NovaTech organization.

15.     Defendant Cynthia Petion is a U.S. citizen. On information and belief, she is currently residing in Panama, and prior to approximately May 2022, she resided in Wellington, Florida. Cynthia Petion is and/or has been described as the founder, sole shareholder, Director, Managing Member, and CEO of NovaTech. According to NovaTech's Disclosure Document, Cynthia Petion is "responsible for creating, planning, implementing, and integrating the strategic direction of [NovaTech], managing and implementing [NovaTech's] research and development of cryptocurrency strategies, and overseeing and managing [NovaTech's] overall operations."

16.     Defendant Eddy Petion is a U.S. citizen and the husband of Cynthia Petion. On information and belief, he is currently residing in Panama, and prior to approximately May 2022, he resided in Wellington, Florida. Eddy Petion is and/or has been described as a Managing Member and Chief Operating Officer ("**COO**") of NovaTech. According to NovaTech's Disclosure Document, Eddy Petion "oversees daily operations and trading for client accounts" at NovaTech, and purportedly "conducted independent research on trading strategies using his proprietary cryptocurrency trading account where he tested various trading strategies including value investor, swing trading, short term trading and algorithmic and machine trading."

17.     Defendant Martin Zizi is a resident of Kennesaw, Georgia. He was the first NovaTech promoter to achieve the rank of Two Star Ambassador, the highest promoter rank within

NovaTech's MLM program. He also founded one of the most successful NovaTech promotional groups: Team Trinity of Success Club.

18.     Defendant James Corbett is a resident of Mastic Beach, New York. Cynthia Petion referred to him as a "Founding Leader" of NovaTech. He achieved the rank of Two Star Ambassador in NovaTech's MLM program.

19.     Defendant Corrie Sampson is a resident of Fairburn, Georgia. She was a Two Star Ambassador in NovaTech's MLM program. She cofounded one of the most successful NovaTech promotional groups: Team Diamond. As of January 2023, Team Diamond had over 50,000 members who were investors in NovaTech.

20.     Defendant Dapilinu Dunbar is a resident of Miami, Florida. He was a One Star Ambassador in NovaTech's MLM program, the second highest rank behind Two Star Ambassador. He was one of the most prolific promoters for NovaTech. He was a member of Team Diamond, where he often collaborated with Sampson and Hadley to market and promote NovaTech to investors and prospective investors.

21.     Defendant John Garofano is a resident of Brooksville, Florida. He was a Two Star Ambassador in NovaTech's MLM program. Corbett originally recruited Garofano to invest and participate in NovaTech and its MLM program, and the two often worked together to market and promote NovaTech to investors and prospective investors.

22.     Defendant Marsha Hadley is a resident of Murrietta, California. She was a One Star Ambassador in NovaTech's MLM program. Hadley and Sampson cofounded Team Diamond.

## IV.     FACTS

**A.  The Petions Founded NovaTech in June 2019.**

23.     Before founding NovaTech, the Petions were the top U.S. promoters for another alleged MLM crypto investment scheme: AWS Mining PTY Ltd ("**AWS**"). Operating as "Team

Nova," the Petions were the highest ranked promoters in AWS's MLM program, commonly referred to as the "founding presidents" of AWS's operations in the United States. AWS offered investments in cryptocurrency mining contracts to investors and paid bonuses and commissions to an MLM network of sales agents who sold those investments for AWS and recruited additional agents into its MLM program.

24.    In November 2018, the Texas State Securities Board ("**TSSB**") found that AWS violated Texas securities laws and ordered AWS to cease and desist from offering its securities in Texas. Among other things, the TSSB found that AWS violated Texas securities laws by making false and misleading statements to investors about the profitability of the investments sold, offering unregistered securities, and recruiting sales agents to offer and sell securities without a registration or license to sell such securities. The AWS scheme collapsed soon thereafter.

25.    At or around the time of AWS's collapse, court records indicate that the Petions were facing personal financial issues, including: (i) in April 2018, a credit card issuer sued Cynthia Petion in state court in Palm Beach County, Florida, and subsequently obtained a judgment against her for $11,776.55 in unpaid debt; (ii) in July 2018, a mortgage lender sued the Petions in state court in Palm Beach County, Florida, in an action to foreclose a defaulted mortgage on a residential real property held by the Petions; and (iii) in August 2019, a debt buyer sued Cynthia Petion in state court in Palm Beach County, Florida, alleging that she had failed or refused to repay a loan.

26.    The Petions began to publicly distance themselves from AWS as it collapsed. They blamed AWS's collapse on its principals and claimed that they, too, were victims of the alleged scheme (even though Cynthia Petion privately acknowledged that she made over $3 million in connection with AWS). The Petions then pivoted to creating and running their own MLM crypto investment scheme—"NovaTech"—which Cynthia Petion told prospective investors was created

as a way for former AWS investors to recoup losses suffered when AWS collapsed. To help ensure NovaTech's success, the Petions lured other top AWS promoters to promote NovaTech to their respective followings of investors.

27.     Taking what they learned from AWS, the Petions founded and operated NovaTech between approximately June 2019 and May 2023 (the "**Relevant Period**"). The Petions developed and implemented an MLM structure for NovaTech—discussed further in paragraphs 34–43 below—modeled after AWS's MLM program. And in an attempt to avoid the TSSB's scrutiny, Cynthia Petion included Texas on NovaTech's list of "Restricted Areas" and claimed not to offer NovaTech to Texas residents.

28.     Throughout the Relevant Period, the Petions marketed NovaTech—among other places, on its website, social media, through Telegram and WhatsApp, and in presentations made available to investors—as an investment program that promised lucrative profits purportedly earned from trading in crypto asset and foreign currency markets by NovaTech's supposed "team of experienced traders." In addition to offering this "passive" investment opportunity, NovaTech also paid commissions, through an MLM structure, to members who recruited new investors. NovaTech's marketing to investors heavily emphasized the MLM "business opportunity."

29.     Throughout the Relevant Period, the Petions held themselves out as the founders and control persons of NovaTech, with Cynthia Petion serving as CEO and Eddy Petion as COO. Cynthia Petion registered and maintained the novatechfx.com and novatechfx.io domains. Cynthia Petion also registered and maintained the NovaTech website, novatechfx.com, that was marketed to and used by investors. The website was hosted on a server provided by a U.S. company.

30.     To participate in the NovaTech investment program, investors created a user account on NovaTech's website and funded their accounts with crypto assets worth a minimum of

$99. While creating their accounts, investors could identify their "sponsor" (i.e., the person who recruited them) by, among other means, following a unique URL provided by the sponsor.

31.     By creating an account on NovaTech's website, investors could access marketing and training materials, access NovaTech's official Telegram channel, invest crypto assets into NovaTech's program, track their account balances (including purported trading profits and recruitment commissions credited to their account), re-invest purported profits and commissions, and submit a request to withdraw purported profits, commissions, and invested capital. NovaTech's website referred to this suite of features as the "back office." The Petions hired, directed, and paid software development companies to develop and maintain the back office.

32.     Throughout the Relevant Period, NovaTech provided investors certain written disclosures during online enrollment, including the "Disclosure Document" (as defined in paragraph 14 above). When an investor sought to invest their crypto assets in NovaTech, the NovaTech website automatically directed the investor to a separate webpage featuring a unique, single-use wallet address to which the investor was directed to send crypto assets for deposit into an account controlled by NovaTech and the Petions.

33.     The Petions established and controlled the methods by which NovaTech sent and received crypto assets to and from investors. NovaTech used a crypto payment processor located in Lithuania (and in Estonia for part of the Relevant Period) (the "**Payment Processor**"). The Petions controlled NovaTech's account with the Payment Processor. The manner in which the Petions elected to process payments using the Payment Processor obscured both incoming transactions by investors to NovaTech and the onward transfer of investors' assets from NovaTech.

**B.  The NovaTech Investment Offering.**

34.     Throughout the Relevant Period, the Petions promoted—among other places, on NovaTech's website and in presentations to investors that they authored, helped author, and/or

approved—the NovaTech investment program as offering a participation interest in a pool of crypto assets that NovaTech purportedly traded on behalf of investors. On its website, NovaTech referred to this participation interest as a "PAMM account," which its website described as a

> product that allows investors to earn without having to trade. You can invest your funds in NovaTech's master accounts to be traded by our experienced team of traders. We receive a percentage of the profits we earn from trading with your funds as a reward. No experience necessary.

NovaTech's website further explained that the "PAMM system allows more money to be brought into play while distributing the risk of one trader across (usually) multiple investors."

35.    In its Disclosure Document provided to investors, NovaTech represented that its investment objective was "to trade in and out of cryptocurrencies achieving gains in the Client's portfolio using proprietary buy and sell trading signals it has developed." NovaTech represented that it purportedly kept 30% of any purported trading profits and distributed 70% to investors.

36.    Throughout the Relevant Period, NovaTech's back office displayed two accounts for each investor: a "Trading Account" and a "Bonus Account." An investor's "Trading Account" reflected the investor's capital contributions (whether initial or subsequent). NovaTech claimed to be actively trading all crypto assets in each investor's Trading Account. The "Bonus Account" purportedly reflected amounts that NovaTech credited, on a weekly basis, with the investor's *pro rata* share of alleged trading profits and any commissions the investor received from participating in the MLM program. In the Disclosure Document and other back-office materials, NovaTech represented to investors that assets in the Bonus Account were not traded, but at all times investors had the option to "rollover" (i.e., reinvest) the purported profits and any commissions accumulated in the Bonus Account by transferring any portion of them to the Trading Account. NovaTech also

represented that investors could withdraw crypto assets from the Trading Account and the Bonus Account, subject to certain terms, as described, among other places, in paragraphs 40–42 below.

37.     NovaTech's fee structure incentivized investors to increase their Trading Account balance by either contributing additional assets out of pocket or by rolling over their Bonus Account balances to their Trading Account. For example, if an investor's Trading Account balance exceeded $25,000 for a full calendar month ("VIP" level), NovaTech waived its monthly service fee for the investor and credited the investor a 1% "cash back reward" that was 1% of monthly trading profits (expressed as a percentage that NovaTech called the "**ROI**"). If an investor's Trading Account balance exceeded $100,000 for a full calendar month ("President's Club" level), NovaTech waived its monthly service fee for the investor and credited the investor a 2.5% cash back reward and a $1,000 gift card bonus.

38.     NovaTech's promoters and the Petions also encouraged investors to rollover their Bonus Account balances into their Trading Account, purportedly to increase the weekly profits investors received. For example, in a Zoom presentation given near the end of 2020 and later posted to YouTube on or around January 3, 2021, Zizi—a top-ranked NovaTech promoter—advised that prospective investors should take at least 10% of their money

> and have it work for you…by putting it in your trading account, and once you have that done, the second -- the third step is for you to take the babies of the money that is making for you, and then put those babies back to work where we get to compound interest, having money working for you, making babies every single week.
>
> Yes, you're making money from your group volume. How much of that is going back into your trading account? Ten percent of that must go back…

39.     As another example, in a video posted to YouTube on May 4, 2022, Cynthia Petion told investors, in relevant part: "[w]hen you earn your bonuses every week,…you have the option of redepositing it so that your account continues to grow, and that's the best way to grow your

11

account without having to add any additional funds out of your own pocket." In this same video, Cynthia Petion also acknowledged that NovaTech incentivized its promoters to persuade investors in their downlines to increase their Trading Account balances, stating: "I know as affiliate marketers we want people to put in as much as possible. Why? Because there's check matching and there's all the other—there's direct referral fees, and everything else. And as accounts grow, our business grows, I get that."

40.     Throughout the Relevant Period, the Petions touted investors' supposed ready access to capital and "weekly liquidity" that NovaTech provided, both in the Trading and Bonus Accounts, claiming that these purported features differentiated NovaTech from other MLM investment programs. For example, this selling point was described on the following slide from a NovaTech marketing deck—authored and approved by the Petions—that NovaTech made available to all investors in the back office between approximately October 2021 and April 2023:



41.     NovaTech disclosed to investors certain investment terms in writing prior to the investment. These terms were located, among other places, in NovaTech's Compensation Plan dated August 3, 2019 ("**Compensation Plan**")—which, on information and belief, was published to NovaTech's back office between approximately August 3, 2019 and October 2020—and an updated Compensation Plan dated October 2020 ("**Updated Compensation Plan**"), which, on information and belief, was published to NovaTech's back office between approximately October 2020 and January 2023. Cynthia Petion drafted both documents and Eddy Petion participated in the drafting process and reviewed drafts. As further detailed in paragraph 53–56 below, the Petions and NovaTech modified these terms in 2023.

42.     The Updated Compensation Plan provided, among other things, that investor requests to withdraw crypto assets from the Trading Account were to be processed within 7–14 business days and, if made within 90 days of registration, were subject to a 15% "processing fee." As to investor requests to withdraw from the Bonus Account, the Updated Compensation Plan provided that such requests were to be processed within 24–48 hours.

43.     Neither NovaTech nor any of its affiliates have ever been registered with the SEC as brokers, investment advisers, or in any other capacity. And the NovaTech securities offerings and sales described herein have never been registered with the SEC. The Petions and the Promoter Defendants have never been registered with the SEC as brokers, investment advisers, or in any other capacity and have never been associated with a broker or dealer registered with the SEC.

**C.  The Petions Designed and Implemented NovaTech's MLM Program to Promote and Distribute NovaTech's Investment Offering.**

44.     The Petions designed and implemented NovaTech's MLM program, which facilitated the distribution of NovaTech's investment offering. Each of the Petions also personally solicited investors. The Promoter Defendants were prominent participants in NovaTech's MLM

program, through which they solicited investors to invest in the NovaTech investment offering. During the Relevant Period, NovaTech raised crypto assets worth more than $650 million, valued as of the time the crypto assets were deposited, using its MLM program to recruit over 200,000 investors.

45.     Throughout the Relevant Period, the Petions solicited potential investors to invest in the NovaTech investment offering through, among other means, NovaTech's website, social media (including Instagram and Facebook), presentations led by the Petions that were broadcast on Zoom to potential investors (and some of which were recorded and distributed publicly on YouTube or other sites), and Telegram channels and WhatsApp groups controlled by the Petions.

46.     The Petions also developed an MLM program designed to solicit prospective investors to invest in NovaTech. This MLM program relied on and incentivized a wide network of promoters to recruit new investors. Promoters stood to gain from recruiting new investors and new promoters into their "downlines." A promoter's downline included the investors that the promoter directly recruited to invest in NovaTech, plus all investors who were recruited to invest in NovaTech by others in that promoter's downline.

47.     The Petions sought to cultivate and maintain relationships with top promoters. They personally recruited at least two Promoter Defendants, Zizi and Corbett, whom the Petions sought out because of the large networks Zizi and Corbett had developed with other MLM programs, like AWS. They also personally met with the top-performing promoters. In or around December 2021, the Petions held a party for top promoters on a boat in Miami, which Zizi, Dunbar, and Garofano attended. In April 2023, Zizi and Dunbar attended Cynthia Petion's birthday party in Panama, and before that, in or around February 2023, Dunbar visited the Petions at their residence in Panama.

48.     Throughout the Relevant Period, NovaTech's marketing materials—which the Petions authored and approved—were geared primarily toward persuading investors to recruit others into their downlines (through the promise of generous commissions), while only describing the trading program in brief and generic terms. NovaTech-branded marketing materials were made available for all investors to download from NovaTech's back office. These materials included a slide deck that Cynthia Petion drafted and Eddy Petion reviewed and approved. Zizi, Corbett, and Garofano, among others, used this slide deck in weekly Zoom meetings with prospective investors throughout the Relevant Period.

49.     When the Petions and certain Promoter Defendants solicited investors, they frequently employed religious overtones, appealed to the financial freedom and independence purportedly attained by investing in crypto assets and participating in MLM programs, and targeted certain affinity groups, in particular the Haitian-American community.

50.     Throughout the Relevant Period, Cynthia Petion branded herself as "The Reverend CEO" in NovaTech promotional materials and laced her investor pitches with religious appeals. For example, in an interview posted to YouTube on October 6, 2022, Cynthia Petion described her founding of NovaTech as "God's vision." In another video in which Cynthia Petion trained promoters on how to present NovaTech to prospective investors, which was posted to YouTube on May 4, 2022, Cynthia Petion stated: "Jesus was the best affiliate marketer in the world."

**D.  NovaTech Rapidly Collapsed and Halted Its U.S. Operations by May 2023.**

51.     By at least around October 2022, investors began to experience substantial delays in withdrawing their crypto assets from NovaTech. In communications to investors, the Petions attributed these delays to technical issues caused by NovaTech's rapid growth. For example, in a post to its official Telegram channel on October 28, 2022, NovaTech acknowledged "a growing

15

number of issues arising concerning USDT cash out requests," and attributed these issues to "the payment processor being unable to process" the requests.

52.     Around the same time, NovaTech came under scrutiny from regulators in U.S. states and Canadian provinces. On October 11, 2022, the British Columbia Securities Commission issued a fraud warning regarding NovaTech, and on October 12, 2022, the Alberta Securities Commission issued its own fraud warning. On November 22, 2022, the California Department of Financial Protection and Innovation issued a desist and refrain order (the "**California Order**"). The California Order found that NovaTech, certain NovaTech entities, and the Petions violated California state securities-registration and anti-fraud statutes by: offering securities without being permitted or qualified to do so, making material misstatements about, among other things, NovaTech's purported registration status, and failing to provide any qualifications to substantiate claims that investor funds were managed and traded by experienced traders. NovaTech could have contested the California Order pursuant to California law, but it never did so.

53.     On January 24, 2023, "NovaTech Admin"—which, on information and belief, is an account controlled by Cynthia Petion—posted an announcement to investors through the back office, attributing the withdrawal delays to "unusually high volumes in cashout requests, in addition to the implementation of new payment processing systems and recent updates."

54.     On February 5, 2023, "NovaTech Admin" posted an announcement to investors through the back office, announcing that NovaTech was instituting a 60-day "temporary freeze" on all investor withdrawals from Trading Accounts. In the announcement, this pause was attributed to "the forced closures of accounts" that were "due to regulatory changes in specific regions," as well as "the massive amounts of withdrawals we had to initiate."

55.     On or around March 31, 2023, the day before the previously announced 60-day "temporary freeze" was due to be lifted, Cynthia Petion posted an announcement to the back office, outlining NovaTech's new compensation plan and new withdrawal terms applicable to all existing and new investors that would take effect the following day. These terms severely restricted the frequency of withdrawals that investors could request from their Trading Accounts, as well as the amount of crypto assets that investors could withdraw from their Trading Accounts, while continuing to permit, with fewer restrictions, withdrawals from Bonus Accounts.

56.     On or around May 11, 2023, NovaTech announced it was halting U.S. operations, and its website was disabled shortly thereafter, after which investors could no longer make any withdrawals from their NovaTech accounts. Ultimately, most investors were unable to withdraw their investments from NovaTech, resulting in substantial losses.

**E.  The Petions Operated NovaTech as a Fraud on Investors.**

57.     The Petions did not provide the SEC access to NovaTech's internal records during the SEC's investigation that preceded the filing of this Complaint. Instead, the Petions and NovaTech ignored the SEC's investigative subpoenas and failed to produce any documents or provide testimony in response to those subpoenas. Nevertheless, the SEC obtained substantial evidence concerning NovaTech's crypto asset transactions and trading, including but not limited to public blockchain data, Payment Processor data, other data from various crypto asset exchanges, and documents and information obtained from NovaTech's former Chief Technology Officer.

58.     NovaTech raised crypto assets during the Relevant Period worth more than $650 million, valued at the time of investor deposits, from more than 200,000 investors in multiple U.S. states and foreign countries. These figures are primarily based on an analysis of cryptocurrency transaction data pertaining to NovaTech, including relevant blockchain data, Payment Processor data, and other relevant data from various crypto asset exchanges.

59.     While soliciting these investments, NovaTech represented to investors that the returns it credited to investor accounts were derived from crypto asset and foreign currency trading activity. During the Relevant Period, NovaTech reported to investors average returns of 2–3% *per week* from its purported trading. Aside from the investor deposits and "profits" from its purported trading activity, NovaTech had no other known profit-generating operations or inflow of assets. Thus, to pay the returns that it reported and credited to investors, as well as the very significant commission payments as part of the MLM program, while also keeping 30% of the profits for itself, NovaTech's trading activities had to generate significant profits above and beyond the hundreds of millions of dollars' worth of crypto assets that NovaTech received from investors. However, NovaTech used only a small fraction of crypto assets contributed by investors to trade on trading platforms, and NovaTech's limited trading was not profitable.

60.     NovaTech failed to generate anywhere near the returns it represented to investors through the small percentage of crypto assets that were traded. To the contrary, records from NovaTech's known trading platforms show that traders and accounts associated with NovaTech *lost* approximately $18 million in trading these assets during the Relevant Period.

61.     NovaTech had an automated system to maintain the accounting for investors' Trading and Bonus Accounts. On a weekly basis, this system calculated the amounts to be credited to investors' accounts based on the trading profits purportedly achieved that week. During the Relevant Period, this system was not linked to any trading venue or trading system that NovaTech used. Instead, the sole input into the accounting system for the reported trading profits/ROI was provided *manually* by Cynthia Petion on a weekly basis. Specifically, Cynthia Petion manually entered the weekly performance percentage in the back office and would then "run" the software

code that would use such manually entered percentage to generate each investor's weekly profit and commissions amounts and post those amounts to each investor's back office account.

62.     The Petions also caused NovaTech to transfer from wallets in which it aggregated investor assets to accounts or wallets that the Petions owned and/or controlled. During the Relevant Period, at least $4.3 million in crypto assets were transferred from NovaTech into accounts or wallets owned and/or controlled by Cynthia Petion, and at least $1.5 million in crypto assets were transferred from NovaTech into accounts known to be owned and/or controlled by Eddy Petion.

63.     In addition, NovaTech transferred an additional approximately $35.2 million in crypto assets from wallets in which it aggregated investor assets to accounts or wallets that, on information and belief, were owned and/or controlled by Eddy Petion. This is based on evidence that these crypto assets were initially withdrawn from NovaTech's Payment Processor account with the internal note "EP" (Eddy Petion's initials), and evidence that at least some of the assets withdrawn from the NovaTech Payment Processor account merged with crypto assets withdrawn from Eddy Petion's known crypto asset platform account before being simultaneously transferred, in a single transaction, to Eddy Petion's suspected deposit address.

64.     NovaTech failed to generate returns from its crypto asset and foreign exchange trading, it used only a fraction of investor assets to trade, and it had no other known sources of revenues besides investor deposits and trading activity. The NovaTech enterprise, thus, was a pyramid scheme that depended on the recruitment of new investors or new investments from existing investors to fund the payouts of purported returns and commissions to existing investors. Inevitably, the new investments NovaTech brought in could not sustain the returns and commissions it owed to existing investors, eventually leading to NovaTech's collapse in May 2023. Investors suffered pecuniary harm as a result of investing in NovaTech.

**F. NovaTech and the Petions Made False and Misleading Statements to Investors in Furtherance of Their Fraudulent Scheme.**

65.     NovaTech and the Petions made several false and misleading statements to investors in furtherance of their fraudulent scheme. These misrepresentations created for investors the false appearance that NovaTech and the Petions were operating a legitimate trading enterprise, when in fact, NovaTech was a fraudulent and illegal pyramid scheme. As alleged below, NovaTech and the Petions made at least five categories of misstatements.

### i. Misstatements regarding the use of assets invested by investors.

66.     Throughout the Relevant Period, the Petions and NovaTech made false and misleading statements to investors regarding how NovaTech used or would use the crypto assets it received from investors. The following are examples of just some of these misrepresentations.

67.     First, NovaTech's Disclosure Document—which Cynthia Petion drafted and Eddy Petion reviewed and participated in drafting, and which was made available to investors between at least August 15, 2019 and May 2023—stated, in relevant part:

> The investment objective of the Trading Advisor [NovaTech] is to achieve capital appreciation and maximize absolute returns for 'cryptocurrency' trading clients using the Company's proprietary trading systems. The Trading Advisor seeks to trade in and out of cryptocurrencies achieving gains in the Client's portfolio using proprietary buy and sell trading signals it has developed.

68.     Second, an affiliate PowerPoint presentation dated January 2022 stated: "LIVE TRADING EXPERIENCE – We trade for you on the LIVE global Forex Market. Test your skills on our Demo Account and see what our professional traders do daily to ensure your financial success!" Cynthia Petion drafted this presentation and Eddy Petion participated in the drafting process. NovaTech posted this presentation to its back office and official Telegram channel between January 2022 and May 2023, and NovaTech and/or its promoters gave the presentation to investors and prospective investors at various times during this period.

69.     Third, NovaTech's Compensation Plan dated August 3, 2019 represented to investors and prospective investors that trading of investors' crypto assets deposited with NovaTech commenced "within approximately 48–72 hours of initial deposit." Cynthia Petion drafted this document and Eddy Petion participated in the drafting process. Between approximately August 3, 2019 and October 2020, NovaTech and the Petions published this document to NovaTech's back office, where investors and prospective investors accessed and reviewed it. NovaTech updated its Compensation Plan in October 2020. In the Updated Compensation Plan dated October 2020—described in paragraph 41 above—NovaTech represented to investors and prospective investors that trading of investor crypto assets deposited with NovaTech commences "within approximately 24–48 hours of initial deposit." Cynthia Petion drafted this document and Eddy Petion participated in the drafting process. Between approximately October 2020 and April 2023, NovaTech and the Petions published this document to NovaTech's back office, where investors and prospective investors accessed and reviewed it.

70.     Fourth, in a March 25, 2020 WhatsApp message to prospective investors, Cynthia Petion stated: "We are trading your balances, anything we pay out is profit from those deposits."

71.     Fifth, throughout the Relevant Period, NovaTech's website—which the Petions controlled—stated: "What we pay out on Friday is a culmination of profits made from the trading activity that took place during the week."

72.     Sixth, in a Zoom presentation on May 4, 2022 intended for prospective investors and posted on YouTube, Cynthia Petion stated, "we've been able to return every penny to every single user since we've started this program, and that's because you give us the funds to trade, we report only what we make, and the rest is still there trading."

73.     Seventh, in a Zoom presentation on June 23, 2022, intended for prospective investors and posted to YouTube, Eddy Petion stated: "We don't just hold your funds and hoping for the market to do better. The funds are being actively traded. Up or down, we make money."

74.     Eighth, in almost-daily "opportunity calls" with prospective investors throughout January–May 2023, two Promoter Defendants (Sampson and Hadley) presented a PowerPoint—which Cynthia Petion approved—that stated "100% of your investment traded."

75.     As the Petions and NovaTech knew, or were severely reckless in not knowing, these statements were false, or at least misleading, at the time they were made. These statements created the false and misleading impression that NovaTech: traded all crypto assets received from investors, did so soon after those assets were invested ("within approximately 24–48 hours of initial deposit"), and only reported and paid out the profits it generated from trading. As alleged in paragraphs 57–64 above, however, NovaTech was a fraudulent crypto trading investment and pyramid scheme, it traded only a fraction of the crypto assets that investors deposited, it reported fabricated returns and commissions, and it appears to have paid out purported returns and commissions to investors using new investments.

### ii.     Misstatements regarding NovaTech's trading performance.

76.     Throughout the Relevant Period, the Petions and NovaTech also made false and misleading statements to investors regarding the supposed profitability of NovaTech's trading. The following are examples of just some of these misrepresentations.

77.     From at least October 2, 2020 through November 22, 2022, the Petions and NovaTech posted to investors through the back office a "trading performance report" on a weekly basis reflecting NovaTech's supposed trading performance for the week. During this period, NovaTech reported weekly returns ranging from 0.65% to 4.20%, with an average weekly return

of 3.18%, and no week in which a loss was reported. During or around this period, NovaTech also posted the same information on its official Telegram channel, which on information and belief, Cynthia Petion controlled.

78.     Similarly, in a March 26, 2020 WhatsApp message to prospective investors, Cynthia Petion posted a chart reflecting NovaTech's purported trading performance between November 2019 and March 2020, which reflected average weekly profits of approximately 4.7%.

79.     Throughout the Relevant Period, Cynthia Petion and NovaTech also misrepresented investors' account balances. As discussed in paragraph 61 above, these numbers were manually generated by Cynthia Petion, who caused NovaTech to credit investors' accounts based on these fictitious returns.

80.     As NovaTech and the Petions knew, or were severely reckless in not knowing, these statements were false and misleading at the time they were made. Among other things—and as alleged in detail, among other places, in paragraphs 57–64 above—the commissions and returns reported to investors' back-office accounts did not reflect NovaTech's actual trading performance, NovaTech's trading was not profitable or at least not as profitable as represented to investors, and the numbers reported to investors were fabricated. NovaTech was a fraudulent crypto investment and pyramid scheme, and it appears to have paid out purported returns and commissions to investors using new investments. NovaTech and the Petions knew or were severely reckless in not knowing these facts, among other reasons, because the Petions controlled all NovaTech accounts/wallets, controlled the commissions and returns reported to investors' back-office accounts, and were aware of all of NovaTech's trading activity, which was either reported to them or conducted in accounts/wallets that they controlled.

### iii.    *Misstatements regarding NovaTech's legitimacy.*

81.    Throughout the Relevant Period, the Petions and NovaTech made false and misleading statements to investors purporting to portray NovaTech as a legitimate financial services company. The following are examples of just some of these misrepresentations.

82.    In a slide deck dated October 2021 that was posted to the back office—which Cynthia Petion drafted and Eddy Petion reviewed and participated in drafting—NovaTech stated that it was a "[l]egally registered hedge fund." On July 15, 2022, NovaTech repeated this statement in a post published to investors on its Telegram channel, which the Petions controlled.

83.    In a March 25, 2020 WhatsApp message to prospective investors, Cynthia Petion stated that "[w]e are registered in USA as a hedge fund and money management company." Eddy Petion sent this same message to prospective investors via WhatsApp on March 25, 2020. In a Zoom presentation on May 4, 2022, intended for prospective investors and posted on YouTube, Cynthia Petion stated that, "[i]n the United States, we're registered as a hedge fund company."

84.    In a March 26, 2020 WhatsApp message to prospective investors, Cynthia Petion represented that "[w]e are registered Brokers" at NovaTech.

85.    As the Petions and NovaTech knew, or were severely reckless in not knowing, these statements were false at the time they were made. Neither NovaTech nor the Petions were registered with the SEC or with any regulatory authority in the United States as a "hedge fund," "money management company," investment adviser, broker, or dealer. At a minimum, these statements were highly misleading, because they created the false impression that NovaTech was a legitimate financial services company that operated in compliance with U.S. laws and regulations and under the oversight of U.S. regulators, when in fact, it operated as an unregistered entity and a fraudulent crypto trading investment and pyramid scheme.

### iv.     *Misstatements regarding the safety and security of the investment.*

86.     Throughout the Relevant Period, the Petions and NovaTech also made false and misleading statements to investors regarding the safety and security of their investments with NovaTech. The following are examples of just some of these misrepresentations.

87.     In the Updated Compensation Plan dated October 2020—described in paragraph 41 above—NovaTech and the Petions claimed that investors could withdraw their assets from NovaTech at any time, and that such withdrawal requests would be processed within 24–48 hours if withdrawn from the Trading Account and 7–14 business days if withdrawn from the Bonus Account. Similarly, marketing decks made available to investors in the back office throughout the Relevant Period—including, among others, a January 2022 Affiliate PowerPoint presentation further described in paragraph 68 above and an October 2021 slide deck further described in paragraphs 40 and 82 above—contained the representation that there were "no withdrawal limits."

88.     In a Zoom presentation on May 5, 2022, which was posted to YouTube, Cynthia Petion stated that, "[i]n this program, you're in profit from day one, because again you have access to that capital."

89.     As the Petions and NovaTech knew, or were severely reckless in not knowing, these statements were false, or at least misleading, at the time they were made because they created for investors the false impression that NovaTech's disclosed business model could fund investor withdrawals with minimal restrictions. In reality, because the Petions and NovaTech were not trading enough capital and were not generating enough profits from that trading to satisfy the weekly returns they claimed to be earning, NovaTech's ability to satisfy investor withdrawal requests depended on its continued recruitment of new investors and new investments. Consequently, NovaTech and the Petions did not have the capital to honor all withdrawal requests

as promised and represented to investors. Inevitably, their representations to the contrary to investors proved false when the new investments raised could not keep pace with the assets that other investors sought to withdraw, eventually leading to the collapse of the scheme.

> ### *v.    Misstatements in response to investor concerns.*

90.    In furtherance of the fraudulent scheme, Cynthia Petion also made false and misleading statements to assure investors that the withdrawal issues that NovaTech was experiencing in late 2022 and early 2023 were not indicative of fraud. These misstatements helped enable NovaTech and the Petions to continue operating their fraudulent scheme and to bilk investors of millions of dollars' worth of additional crypto assets invested.

91.    On February 28, 2023, a Promoter Defendant (Dunbar) posted to his Vimeo channel a voice memo from Cynthia Petion intended for NovaTech investors and promoters. In the voice memo, Cynthia Petion blamed delays in withdrawals on "everything going on in the market" and system downtime due to the volume of investor deposits and withdrawals. She continued:

> I wish I could give people the calmness that we ourselves feel internally knowing that things are under control and improving every day. . . . No business allows people to just withdraw huge sums of money at free will. It's not our intention to not give people their capital. However, people need to understand the nature of the business. And if money is trading and everybody wants to panic and withdraw and do everything else, it's going to cause a backlog in doing so. Because we have to forcibly close trades to release and that's what we've been trying not to do. You guys have seen the market recently whether somebody's trading or not trading, whatever, there's freezes going on all over the place. So we're not doing anything that's not normal.

92.    As Cynthia Petion knew or was severely reckless in not knowing, these statements were false or misleading at the time they were made. Among other things, investors' assets were not tied up in trading as Cynthia Petion represented, because, as discussed, NovaTech deployed only a small percentage of investors' assets towards trading. As Cynthia Petion knew or was severely reckless in not knowing, investors experienced issues withdrawing their assets from

NovaTech—not because assets were tied up in trades or due to market issues—but primarily because NovaTech was collapsing and lacked the assets to satisfy all investor withdrawal requests.

**G. The Promoter Defendants Marketed NovaTech to Investors.**

93.    The Promoter Defendants—including Zizi, Corbett, Sampson, Dunbar, Garofano, and Hadley—played a critical role in helping the Petions distribute the NovaTech investment offering to investors. As further discussed below, the Promoter Defendants marketed and offered the NovaTech investment to investors, recruited and maintained a wide network of "downline" investors, many of whom became recruiters themselves and brought in additional investors, and received substantial commission payments and bonuses in connection with their efforts to distribute the NovaTech investment offering to investors.

*i.    The Promoter Defendants solicited investors to invest in NovaTech.*

94.    The Promoter Defendants rose to the highest ranks in the NovaTech MLM program, including four "Two Star Ambassadors" (Zizi, Corbett, Garofano, and Sampson), and two "One Star Ambassadors" (Dunbar and Hadley).

95.    A Two Star Ambassador was the highest of nine ranks in NovaTech's MLM program and required, among other things, "group volume"[1] of at least $100 million in crypto assets invested by the promoter's downline. A One Star Ambassador was the second highest rank in NovaTech's MLM program and required, among other things, "group volume" of at least $50 million in crypto assets. Aside from the commissions that promoters received from successfully recruiting others to invest in NovaTech, promoters also stood to earn a "rank achievement bonus"

---

[1] As used by NovaTech, group volume referred to the amount of crypto assets invested by a promoter's downline, including crypto assets that investors in the promoter's downline contributed or transferred to NovaTech and any purported trading profits or commissions that investors in the promoter's downline chose to "rollover" or reinvest.

for achieving the next highest promoter rank. For example, upon achieving the rank of Two Star Ambassador, a promoter earned $100,000; upon achieving the rank of One Star Ambassador, a promoter earned $50,000.

96.     As further described below, each Promoter Defendant: (a) received commissions and/or other transaction-based compensation from NovaTech for successfully recruiting new investors; (b) regularly participated in securities transactions for NovaTech at key points in the chain of distribution; (c) provided advice to NovaTech investors and prospective investors regarding the merits of investing and reinvesting in NovaTech; and (d) actively marketed and promoted the NovaTech investment opportunity to investors and prospective investors.

        a.   <u>Martin Zizi</u>

97.     Zizi was a Two Star Ambassador. He acted as a promoter for NovaTech between approximately October 2019 and at least February 2023. Before NovaTech, he promoted and solicited investors for at least two other securities issuers: AWS and ZeekRewards.[2] As a NovaTech promoter, Zizi directly recruited at least 30 investors to invest in NovaTech, and he developed and maintained a downline that totaled approximately 120,000 to 140,000 investors. Though Zizi broadly promoted NovaTech, a significant number of investors whom he recruited into NovaTech were from the Haitian-American community.

98.     Zizi promoted NovaTech through email and his personal website and by, among other means, organizing and appearing in four weekly Zoom sessions: two (in English and in Haitian Creole) aimed at recruiting new investors ("opportunity calls") and two (one in English, the other in Haitian Creole) aimed at training downline promoters to recruit investors ("training

---

[2] ZeekRewards was a fraudulent scheme that the SEC halted in 2012. *See SEC v. Rex Venture Grp., LLC d/b/a ZeekRewards.com*, No. 3:12-cv-0519 (W.D.N.C. 2012).

calls"). Zizi also hosted multiple in-person events for his vast NovaTech downline to attend. For example, in November 2022, Zizi hosted and was the keynote speaker at a NovaTech "Gratitude Gala" in Orlando, and on January 21, 2023, he hosted another NovaTech gala in Atlanta. Through these efforts, Zizi solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, made statements or opinions relating to the merits of investing and/or reinvesting in NovaTech, trained investors how to create a NovaTech account, and answered investor questions.

99.     Like the Petions, Zizi often employed religious overtones and appealed to the financial freedom and independence that investing in NovaTech purportedly offered investors. As an example, in a video presentation posted to YouTube and dated January 21, 2022, Zizi told investors and prospective investors that the Petions are "the people that God g[a]ve the vision to start this company." During that presentation, he further advised:

> And it's very difficult to make a decision to take a little bit of your hard-earned money, and this is why I make you comfortable in a sense that with NovaTech, there are different levels. And Pastor Bob just shows you that you could start as low as $500 all the way down to a million bucks. It's based on where you are at and how comfortable you are. Now, we do know there are some people are going through some financial struggle that probably lost their job during the pandemic and are looking for a solid way to improve their financial wellbeing. Based on our experience with the owners of the company and with the robots who's been blessing us for the past 28 going on 29 months, we feel comfortable presenting this project as a way that will change our lives.

100.     As another example, in a January 3, 2021 video presentation posted to YouTube, Zizi told investors and prospective investors of NovaTech:

> You need to take ten percent of your paycheck and get that ten percent to work for you, and that's the term, and I got it really right from the book when we talk about having your money making babies for you. Find a vehicle that can grow that ten percent over and over. Find a vehicle, do you—and we find a vehicle. Now, we have to fund multiple vehicles, but we have one solid one which you are sitting on right now which is NovaTech, and having that vehicle spilling out money for you. One key thing is said in that lecture was that you have to make sure that the vehicle

that you are using, the person or the director of that vehicle know well about money. They know how to have money work for you. . . . Now, it's said in the book a minimum of ten percent. So, you've got to take ten percent of your money and have it work for you, and you already know how it's going to work for you by putting it in your trading account, and once you have that done, the second – the third step is for you to take the babies of the money that is making for you, and then put those babies back to work where we get compound interest, having money working for you, making babies every single week.

      b.  <u>James Corbett</u>

101.    Corbett was a Two Star Ambassador. He acted as a promoter for NovaTech between approximately August 2020 and February 2023. Corbett was a top AWS promoter that Cynthia Petion directly recruited to NovaTech. He has promoted and solicited investors for at least one other dubious securities issuer that operated an MLM program: AWS. As a NovaTech promoter, Corbett directly solicited and sponsored at least 21 investors to invest in NovaTech, and he developed and maintained a downline at NovaTech that totaled approximately 80,000 investors. Corbett aggressively promoted NovaTech and recruited investors through weekly Zoom meetings, which he promoted on social media, as well as through his personal website. Through these efforts, Corbett solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, and made statements or opinions relating to the merits of investing and/or reinvesting in NovaTech. At the end of his Zoom meetings with investors and prospective investors, Corbett would typically hold a Q&A session where he answered investor questions.

102.    As an example, in a May 12, 2022 video presentation that Corbett titled "Why NovaTech is the BEST Opportunity, by Global Ambassador James Corbett," Corbett told investors and prospective investors: "NovaTech was, simply put, designed for the common man to be successful at." In a video presentation to NovaTech investors and prospective investors dated

February 19, 2022, Corbett opined: "A thousand dollars for one year, you can turn into $5,410."

He further assured investors and prospective investors:

> So look at this, and don't be scared because you've finally found a place that not only are you going to see it's very easy, extremely easy to use, you don't need to go to college to learn how to do NovaTech. You sit down with a leader for an hour and you'll know -- not even an hour -- half-an-hour -- and you'll know the basics on how to be successful in this program. I mean it doesn't take a big learning curve. But try to give yourself a week or two to at least understand it, right?

### c. John Garofano

103.    Garofano was a Two Star Ambassador. He acted as a promoter for NovaTech between approximately January 2021 and February 2023. As a NovaTech promoter, Garofano directly solicited and sponsored at least 12 investors to invest in NovaTech, and he developed and maintained a downline of investors who collectively invested and/or reinvested at least $100 million in crypto assets into NovaTech. Garofano worked closely with Corbett, who recruited Garofano to invest in and join NovaTech. Like Corbett, Garofano aggressively promoted NovaTech and recruited investors through weekly Zoom meetings. Through these efforts, Garofano solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, and made statements or opinions relating to the merits of investing and/or reinvesting in NovaTech. At the end of his Zoom meetings, he (along with Corbett) typically held a Q&A session where he answered investor questions.

104.    As an example, in a video presentation titled "NovaTech PAMM Account Presentation_Earn Passive Income" and uploaded to Vimeo on or about July 2, 2022, Garofano advised investors and prospective investors, among other things:

> There's no skills required to trade unlike other platforms….
>
> The company provides customers with affordable financial solutions including trading the trading of cryptocurrencies and forex online and some of the using some of the most sophisticated technologies like MetaTrader platform….

[O]ne of the deepest liquidity pools in the industry….

They're using professional software and professional management team….

Really like a mutual fund….

NovaTech has expert traders….

About 70-80% profit wins on their trades….

So it's not tied up in any contract if I've done contracts before with other type of investments, especially with mining cryptocurrency mining if you're familiar with that and that's locked up, you can't you don't have access to it. Once you invest with NovaTech, you have a hundred percent access at all times to your balances. What I do recommend, this is what I do.  I teach this or explain this to my people I get in is, you know, add a little bit more each month or each week or every pay period or when you can because you really want to get these balances up a little bit more towards the bronze the silver area [referring to investment packages] to make it really worthwhile….

        d.   <u>Corrie Sampson</u>

105.    Sampson was a Two Star Ambassador. She acted as a promoter for NovaTech between approximately July 2021 and June 2023. She co-founded "Team Diamond," the brand under which she promoted NovaTech. Sampson directly solicited and sponsored approximately 35–40 investors and had over 50,000 investors in her downline. Sampson aggressively promoted NovaTech primarily through weekly Zoom meetings, as well as through phone, text message, and Telegram. Certain Team Diamond Zoom presentations were recorded and then posted to YouTube. On April 17, 2022, Sampson was one of three women who joined Cynthia Petion in a "Boss Ladies" Zoom webinar that was open to the public and during which Sampson described, among other things, how she had been successful in building Team Diamond. Through these and other efforts, Sampson solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, made statements or opinions

relating to the merits of investing and/or reinvesting in NovaTech, trained and assisted investors on how to create an account, and answered investor questions.

106.    As an example, in a February 21, 2022 video presentation, Sampson advised investors and prospective investors of NovaTech: "This will change your lives, not just for you but for generations to come. We are able to create generational wealth here, family. You want to leave a legacy, get started. Get started right away." Similarly, in her weekly Zoom presentations, Sampson often used an online compound interest calculator to demonstrate how much investors stood to earn based on NovaTech's purported trading results.

e.    Dapilinu ("Dap") Dunbar

107.    Dunbar was a One Star Ambassador. He acted as a promoter for NovaTech between approximately September 2021 and May 2023. He has promoted and/or been involved in at least 30 other network marketing businesses that focus on crypto assets. As a NovaTech promoter, he directly solicited and sponsored at least 110 investors to invest in NovaTech, and he developed and maintained a downline of at least 10,000 investors. Dunbar, who Hadley recruited into NovaTech, was a member of Team Diamond, and frequently appeared as a presenter in Team Diamond's weekly Zoom presentations to prospective investors. Dunbar aggressively recruited investors through Telegram, Zoom meetings, and videos he posted on a Vimeo channel he operated. Dunbar used his Vimeo channel to promote NovaTech and provide updates to his downline. Through these and other efforts, Dunbar solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, made statements or opinions relating to the merits of investing and/or reinvesting in NovaTech, trained investors on how to create an account, and answered investor questions. On occasion, Dunbar also represented to investors and prospective investors that he was assisting NovaTech with clearing

tech support tickets submitted by investors in order to minimize the delays in processing investors' withdrawal requests.

108.    In January 2023, Dunbar emceed NovaTech's "New Year's" live YouTube webinar that featured Cynthia Petion and had over 4,000 viewers. As another example, in a YouTube video posted on April 2, 2023, Dunbar advised investors and prospective investors about "seven ways that NovaTech will pay you." He further advised about how NovaTech worked, its alleged profitability, and how investors could make money by investing in NovaTech. And in the course of promoting NovaTech, Dunbar further advised prospective investors about the merits of obtaining investment exposure to crypto asset markets through NovaTech:

> [T]he crypto market is where you want to be, okay? Do not let the outside voices distract you from the potential of what you can earn…. And with that being said, guys, your future, freedom, and dreams start right now. Dream big…. Guys, I'm telling you, build your future, guys, alright? Use Bitcoin. Stack your Bitcoin…. Retirement is going away. If you are in the U.S., Social Security is going away. There are going to be other ways for you to secure your future. And I'm telling you this just happens to be one of those ways.

### f.    Marsha Hadley

109.    Hadley was a One Star Ambassador. She acted as a promoter for NovaTech between approximately 2021 and June 2023. On information and belief, she directly solicited and sponsored investors to invest in NovaTech, including Dunbar. And her rank as a One Star Ambassador implies that she developed and maintained a downline of investors at NovaTech who collectively invested and/or reinvested at least $50 million in crypto assets into NovaTech.[3] Hadley also co-founded Team Diamond with Sampson. Like Sampson, Hadley used Zoom, Telegram, WhatsApp, and YouTube to aggressively promote NovaTech and recruit investors. Through these

---

[3] As explained in footnote 1 above, this $50 million could include investments of newly contributed crypto assets, plus any purported trading profits or commissions that investors in Hadley's downline chose to "rollover."

and other efforts, Hadley solicited existing and prospective investors to invest and/or reinvest in NovaTech, provided advice relating to investing in NovaTech, and made statements or opinions relating to the merits of investing and/or reinvesting in NovaTech.

110. As an example, in a February 21, 2022 video presentation to investors and prospective investors of NovaTech, Hadley stated:

> Those of you that's in the stock market, stocks were going down, down, down, like crazy. Cryptocurrency was going down, down, down like crazy. And then as we look at it, we still came out on top. NovaTech, we had a 1.85 percent profit? Okay. Sign me up, all day, every day. So why is NovaTech different, ladies and gentlemen? …
>
> Number one, no expiration date and no earning caps. We can earn whatever you want to earn for yourself and your family, the company says we don't want to limit anyone. Whatever your desires are that you need to come in every month in profits, have at it. You can trade as long as you want, no repurchase requirements. And we can cancel at any time. So I was talking to the cofounder of our team, Corrie J., right? Call her Corrie J. bad to the bone Sampson, I said, Corrie J., wait a second, so we're not doing any trading at all; we don't have to have any knowledge of cryptocurrency or trading. The experts is doing everything. We get paid every Friday. Who would want to cancel?

### ii.   The Promoter Defendants were compensated for soliciting investors.

111. Each Promoter Defendant received commissions from NovaTech for recruiting new investors and for raising crypto asset investments in NovaTech. The Promoter Defendants received these commissions pursuant to NovaTech's MLM compensation structure, which the Petions designed, implemented, and operated.

112. NovaTech's MLM compensation structure provided substantial incentives for the Promoter Defendants and other promoters to recruit new investors. For example, by recruiting a "direct referral," i.e., a person directly sponsored by a promoter and thus positioned one level below that promoter in the downline, such a promoter stood to be paid: (i) 1% to 5% of the direct referral's investment (the "direct referral bonus"); (ii) 0.5% to 5% of the direct referral bonuses

earned by any recruits up to seven levels down in the promoter's downline; (iii) 0.25% to 5% of the trading "profit" paid to recruits up to nine levels down in the promoter's downline; (iv) 0.25% to 5% of the service fees paid by recruits up to nine levels down in the promoter's downline; and (v) additional "fast track" and "rank achievement" bonuses that incentivized quickly recruiting a large downline.

113.    NovaTech referred to this complicated compensation structure as "7 ways to get paid." NovaTech promoted this heavily, including in the marketing slide deck that Cynthia Petion prepared (a slide from which is depicted below) and which was made available to investors in the back office. Each of these "7 ways to get paid" resulted in transaction-based compensation being paid to each Promoter Defendant and other promoters at NovaTech to incentivize them to bring additional investors and/or investments into NovaTech.



114.    Ultimately, each Promoter Defendant received commissions and/or other transaction-based compensation pursuant to NovaTech's Compensation Plan and/or Updated Compensation Plan (together, the "**Compensation Plans**"), which are further detailed in paragraph

84 above. Given the significant commissions they were credited through NovaTech's Compensation Plans, the Promoter Defendants were able to withdraw significant compensation from NovaTech in comparison to the amount of crypto assets they invested. Zizi, Sampson, Garofano, Dunbar, and Corbett each withdrew more than the amount each invested in NovaTech. On information and belief, Hadley also withdrew more than she invested.

### H. Four Promoter Defendants Engaged in Deceptive Acts in Furtherance of NovaTech's Fraudulent Scheme in the Face of Red Flags.

115.    Four of the Promoter Defendants—Zizi, Corbett, Dunbar, and Sampson—became aware of red flags putting them on notice that NovaTech was not a legitimate investment program. These Promoter Defendants faced a choice: cease promoting NovaTech in light of the alarming information they knew or follow the strong financial motivations they had under NovaTech's Compensation Plans to ignore the red flags and continue to promote NovaTech. Each of these four Promoter Defendants chose the latter. In the face of the red flags, they continued to promote and support the Petions and NovaTech's fraudulent scheme and engaged in other deceptive acts in furtherance of the scheme. In doing so, they helped create the false impression that NovaTech was a legitimate investment opportunity, when, in fact, it was on the brink of collapse. These Promoter Defendants, thus, helped the Petions and NovaTech continue operating, recruiting promoters, and raising new investments from unwitting investors.

#### i.    *Zizi engaged in conduct in furtherance of the fraudulent scheme.*

116.    Zizi became aware of the Canadian province fraud warnings at or around the time they were issued in October 2022. He became aware of the California Order at or around the time it was issued on November 22, 2022. And he became aware of the delays and pause in withdrawals at or around the time they occurred in November 2022 and early 2023.

117. Zizi testified that Cynthia Petion told him that there were times when NovaTech was not profitable, and that when reporting trading results, she used profits from other profitable weeks to avoid reporting a loss or lower profit in the weekly ROI figures.

118. Despite serving in a role where he advised investors and prospective investors about the merits of the NovaTech investment, Zizi did not adequately investigate these red flags. In regard to the Canadian province fraud warnings and California Order, for example, Zizi did nothing more than take Cynthia Petion at her word that "legal is on top of it."

119. In the face of these red flags, Zizi at least negligently continued to promote and solicit investors for NovaTech. Indeed, Zizi continued to promote NovaTech and solicit investors for NovaTech until at least February 2023. He testified that he continued holding NovaTech opportunity calls, aimed at recruiting new prospective investors to invest in NovaTech, until February 2023, and that he continued to use his personal marketing website to promote NovaTech until February or March of 2023. He also testified that he continued doing training webinars with NovaTech investors until April or May of 2023.

120. After becoming aware of the facts referenced in paragraph 117 above, Zizi failed to disclose this material information about how Cynthia calculated and reported the weekly ROI numbers to investors. Acting as an unregistered broker, Zizi provided advice to investors about the merits of investing in NovaTech and held himself out as having special insight and knowledge about NovaTech through his relationship with the Petions. He used this position to market and promote NovaTech, encourage investors to invest, and advise investors about investing.

121. In addition, Zizi testified that he generally told investors, in presentations to and/or communications with investors throughout the Relevant Period, that the ROI varied every week based on how NovaTech performed. On information and belief, Zizi was aware of the facts

referenced in paragraph 117 above at the time of at least some of the instances in which he made this representation to investors, but he failed to disclose this material information to investors at that time or in subsequent communications with investors.

122.    Zizi also actively sought to either discredit or undermine the California Order. For example, in a WhatsApp chat with a group of high-level NovaTech promoters (who also were investors), Zizi sent a message on or about November 27, 2022 that discredited the California Order on the basis that it was unsigned. Zizi also testified that, on unspecified dates, he told California investors to circumvent the California Order by forming a Wyoming limited liability company and opening an account in that entity's name.

123.    Zizi had financial motivations to ignore the red flags and continue to promote NovaTech. Zizi continued to benefit from investors joining or reinvesting in NovaTech. Zizi's last known direct recruit that he solicited and sponsored invested in NovaTech on or about January 4, 2023. On information and belief, Zizi's downline of investors continued to invest and/or reinvest in NovaTech, as well as solicit and sponsor new investors, until NovaTech shut down its U.S. operations in May 2023. Zizi also continued to make withdrawals from NovaTech after becoming aware of the red flags through at least the beginning of 2023.

### ii.    *Corbett engaged in conduct in furtherance of the fraudulent scheme.*

124.    Through his experience with AWS, Corbett was aware of the signs of a fraudulent MLM crypto asset investment program. For example, he knew that investors in AWS suffered losses after AWS paused or delayed investor withdrawals and the TSSB issued a cease-and-desist order finding that AWS violated Texas securities laws.

125.    After signing up to promote NovaTech's program, Corbett became aware of allegations made against NovaTech. As early as August 2020, for example, Corbett was aware of

social media posts in the MLM space accusing NovaTech of being a scam or Ponzi scheme, which he affirmatively attempted to refute through his own comments and posts online. For example, on or around August 25, 2020, Corbett posted a comment to an online article published on BehindMLM.com, a website that purports to be a "resource to people curious about the MLM industry and the companies that exist within it."[4] In response to other posts and comments to the article that questioned the legitimacy of NovaTech, Corbett wrote:

> Like the opinion editor and Not a real reporter you give us your opinion without talking to whom your [sic] bashing. I know for a fact you did Bias research on Nova. Tell me what slim [sic] gave you your info? I was in AWS for 3 years and can assure everyone Cynthia was NEVER a [sic] owner. All she ever did is try and help everyone. Nova tech was developed to clear Cynthia's name. I can tell you this she will stop at nothing to prove you wrong. As for the slime who paid you to post this FALSE evaluation, I suspect he lost money (who hasn't lost money?)…. Sincerely James Corbett Servant leader.

126.    As another example, in January 2021, Corbett received an email from a prospective investor asking: "[h]ow do we know that real trading takes place and this is not just a Ponzi using new money to pay old?" Corbett testified that this was a question he heard "quite frequently" while promoting NovaTech.

127.    Corbett also became aware of the Canadian province fraud warnings at or around the time they were issued in October 2022. He became aware of the California Order at or around the time it was issued on November 22, 2022. And he became aware of the delays and pause in withdrawals at or around the time they occurred in November 2022 and early 2023. These were the same or similar red flags as were present at AWS before its collapse.

128.    Corbett was also aware that the crypto asset markets fluctuated throughout the Relevant Period, with various times where crypto assets that NovaTech purported to trade dropped

---

[4] "About BehindMLM," https://behindmlm.com/about/ (last visited Aug. 7, 2024).

in value. Yet, as Corbett knew, NovaTech purported to report weekly trading profits throughout the Relevant Period.

129.    The red flags discussed in paragraphs 124–128 above put Corbett on notice that NovaTech was not a legitimate investment program, was defrauding investors, and/or was making false or misleading statements or omissions to investors. Despite serving in a role where he advised investors and prospective investors about the merits of the NovaTech investment and holding himself out as having special knowledge and insight into NovaTech, Corbett did nothing to independently investigate these red flags or allegations levied against NovaTech. For example, Corbett testified that he regularly asked Cynthia Petion for additional information about NovaTech's trading, including as early as January 2021, but she refused to provide it. He also testified that he did nothing to investigate the California Order aside from asking Cynthia Petion about it, who merely told him the Order was not final and had not been served on NovaTech yet. He did not even bother to search online for the Order.

130.    Well after learning of these red flags, Corbett continued to promote and solicit investors for NovaTech through at least May 2023. He also continued to support NovaTech in the face of red flags indicating that it was not operating as a legitimate investment program.

131.    For example, Corbett continued to promote NovaTech on his personal website until at least June 2023. Corbett also continued to advise and support his downline of NovaTech investors until at least May 2023. In December 2022, for instance, he sent a WhatsApp message to other NovaTech leaders discussing how his "group" in the Canadian provinces where the fraud warnings were issued "has about 1700 members and was hoping to leave [their investments] in unless they are told to withdraw." He further wrote: "[t]he way Im [sic] reading this is if they are not asked to withdraw and close account then they can still trade." On information and belief, he

subsequently advised at least some of these investors about keeping their investments in NovaTech.

132.    As another example, in early January 2023, Corbett participated in a recorded interview with a YouTuber who runs the channel "Ponzi Patrol." The interview was conducted via Zoom and was posted to the Ponzi Patrol YouTube channel on or about January 11, 2023. Corbett knew that the interview was recorded, would be posted online to the general public, and would address allegations that NovaTech was a Ponzi scheme.

133.    In the interview, Corbett held himself out as having a close relationship with the Petions and denied that NovaTech was a Ponzi scheme. He also addressed allegations and investor concerns relating to NovaTech, including concerns over delayed withdrawals, the Canadian province fraud warnings, and the California Order. The following are examples of some of the statements that Corbett made during the interview:

> I've been defending NovaTech for four years. I traveled the world with these people the three prior years. I know the development and what happened, and what they did to develop NovaTech. I know the trading and the board meetings and how they go -- went about, and the story of how they opened up, and why they even opened up a trading certificate….
> …
> First of all, California, they can still trade on this platform. They haven't been stopped from trading. They're still running their things.…Canada is shutting down there, but – but think about what you're saying. They're paying back everybody in Canada that was trading on their platforms, and it's going on right now.
> ….
> They're not a Ponzi scheme, because I know that they're not running a Ponzi scheme. I know these people. I know they're trading with the funds that they're…receiving….

134.    Corbett did not "know that they're not running a Ponzi scheme." He did not know what, if any, trading NovaTech actually did. His statements further sought to refute or quell investor concerns about the regulatory scrutiny and withdrawal issues that NovaTech was experiencing at the time, even though he lacked direct knowledge or evidence to say, for example,

that NovaTech was "paying back everybody in Canada." His statements created the false and misleading impression that NovaTech was a legitimate investment program and that the issues it faced would pass and/or not prevent investors from recouping their investments. And he made these statements despite being aware of the red flags, acting as an unregistered broker to investors, and holding himself out to investors as having a special relationship and access to NovaTech and its founders and special insight into and knowledge of NovaTech's operations.

135.    Individuals continued to invest and/or reinvest in NovaTech following Corbett's deceptive acts and his awareness of the red flags. On information and belief, Corbett's downline of investors continued to invest and/or reinvest in NovaTech, as well as solicit and sponsor new investors, until NovaTech shut down its U.S. operations in May 2023.

### iii.    *Dunbar and Sampson engaged in conduct in furtherance of the fraudulent scheme.*

136.    Sampson and Dunbar, who together promoted NovaTech as part of Team Diamond, became aware of the Canadian province fraud warnings at or around the time they were issued in October 2022. They also became aware of the California Order at or around the time it was issued on November 22, 2022. And they became aware of the delays and pause in withdrawals at or around the time they occurred in November 2022 and early 2023. These red flags put Sampson and Dunbar on notice that NovaTech was not a legitimate investment program, was defrauding investors, and/or was making false or misleading statements or omissions to investors. Indeed, Dunbar testified that he knew, based on his experience with other failed crypto and MLM programs, that one sign that an MLM and/or crypto company is on the verge of collapse is when the company stops paying out as often as it previously did.

137.    Despite serving in a role where they advised investors and prospective investors about the merits of the NovaTech investment, Sampson and Dunbar did nothing to independently

investigate these red flags. Sampson even testified that she took no steps to determine whether the California Order was legitimate.

138.     Dunbar and Sampson continued to promote and solicit investors for NovaTech well after becoming aware of the red flags. Specifically, they both continued to promote NovaTech and appear on NovaTech promotional Zoom meetings until at least May 2023.

139.     Sampson and Dunbar also sought to discredit or undermine the California Order. For example, in a video presentation hosted by Sampson and posted to the Team Diamond Telegram channel on or about May 20, 2023, Dunbar stated:

> [W]e allowed a person, not a state . . . a person who filed a cease and refrain that meant diddlysquat to scare hundreds of thousands of people into thinking NovaTech was going away because they got a cease and refrain in California. Never got signed by anyone in California.[5] It was like you going and putting a restraining order on someone by filing documentation and paying $89.

140.     At the end of Dunbar's rant seeking to discredit the California Order, Sampson stated her agreement with Dunbar's description of the California Order. She did so in her trusted position as the cofounder and leader of Team Diamond, to whom Dunbar directed his comments.

141.     Dunbar and Sampson also sought to undermine and quell investor concerns about withdrawal issues and encourage and advise investors and prospective investors to invest in NovaTech in spite of the red flags.

142.     For example, in or around March or April 2023, Dunbar posted a video "short" to his BTGi[6] Telegram chat, which was subsequently posted to YouTube on or about May 29, 2023,

---

[5] The version of the California Order that was posted to the website of the California Department of Financial Protection and Innovation ("**DFPI**") was/is unsigned, like other orders posted to DFPI's website, consistent with DFPI's policy of not publicly posting signed orders to avoid issues with forged/copied signatures.

[6] "BTGi" is shorthand for "Bridging the Gap Internationally," an acronym that Dunbar used on social media and online.

titled "Novatechfx. Dap [Dunbar] and the CEO working on efficiency of the payouts. Listen", where he appears with Cynthia Petion in what appears to be Panama. In this video, Dunbar claimed to be helping resolve support tickets so that NovaTech could resume processing investors' withdrawal requests. On February 28, 2023, he posted to his Vimeo account a voice memo from Cynthia Petion, in which she blamed withdrawal delays on assets tied up in trades, technical issues, and market factors. Dunbar's statements and actions created the false and misleading impression that the investors' withdrawal issues would soon be resolved and were not cause for alarm.

143.    Likewise, Sampson sought to allay investor concerns over NovaTech's withdrawal issues. In her May 20, 2023 video posted to the Team Diamond Telegram channel, Sampson advised investors to "just hang in there as long as we possibly need to." She also advised: "[w]e're gonna get paid again, y'all, and it won't be long. I don't know. No one told me that. That's my thought, and it's also my prayer."

144.    In that same May 20, 2023 video, Dunbar and Sampson continued to promote NovaTech and advise investors and prospective investors to believe and invest in NovaTech:

MR. DUNBAR: NovaTech is who we all believe in, and NovaTech is who we're all going to continue to believe in until we have no reason to, and at this point we have every reason –

MS. SAMPSON: Every reason

MR. DUNBAR: -- to believe. All right? So --

MS. SAMPSON: Praise the lord.

MR. DUNBAR: Queen, I'm going to go ahead and let you go for now, and then we'll continue and dive and unpack a little more for that. So --

MS. SAMPSON: All right, young king. Well, I sure appreciate you letting me do that. You know? (Laughing) Good information there, baby, and just a good strong mindset. You know, it's what it is that -- you know, that we need. It's information that we need to hear, it's very strong, it's very powerful. And if you really embellish and take that in it really and truly can be lifesaving.

145.     Dunbar and Sampson had strong financial motivations for willfully ignoring the red flags and continuing to promote NovaTech. For example, Sampson reached the rank of Two Star Ambassador on January 25, 2023, which earned her a bonus of $100,000. And despite advising investors to "just hang in there," Sampson privately began withdrawing heavily from NovaTech starting on January 2, 2023, and continuing through March 2023, during which time she ultimately withdrew nearly $1 million in crypto assets from NovaTech. Likewise, Dunbar continued to withdraw from NovaTech until as late as March or April 2023.

146.     Dunbar and Sampson also discouraged investors from contacting regulators or government authorities about NovaTech. In a video posted to his Vimeo channel in May 2023 (which also became available on YouTube), Dunbar stated:

> Let me tell you guys, some of you saying, "I'm gonna call the SEC, I'm gonna call the CFTC." Go ahead and call and see if everybody doesn't lose their money. No institution higher up wants to see people win. We have to protect what we have and we do that by being patient.

147.     In a YouTube live stream interview on May 16, 2023 that received over 9,000 views, Dunbar admonished concerned investors: "[t]he more negativity you put out there, the more at risk our funds are."

148.     Like Dunbar, Sampson also discouraged at least one concerned investor from contacting the SEC. During a call with the investor in January 2023, the investor asked Sampson if they could share her contact information with the SEC. Sampson refused and responded: "[w]hy would you do that? Why would you share our information with a government agency? Because you haven't been able to get your withdrawals? Just like others have not been able to get their withdrawals? Are you doing it out of spite? Out of spite?"

149.     Individuals continued to invest and/or reinvest in NovaTech's scheme following Sampson's and Dunbar's deceptive acts and their awareness of the red flags. And Sampson and Dunbar continued to benefit from the same. Based on the information available at this time, at least two of Dunbar's direct recruits invested in NovaTech after November 2022. Although Sampson's last known *direct* recruit invested in NovaTech on or around November 15, 2022, she was promoted to Two Star Ambassador on January 25, 2023, which, according to NovaTech's terms, means that her downline investors continued to invest and reinvest after November 2022 to allow her to cross the $100 million threshold to reach the rank of Two Star Ambassador in January 2023. On information and belief, Sampson's and Dunbar's respective downlines continued to invest and/or reinvest in NovaTech, as well as solicit and sponsor new investors, until NovaTech shut down its U.S. operations in May 2023.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

### *(Against NovaTech, the Petions, Corbett, Dunbar, and Sampson)*

150.     The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

151.     By engaging in the conduct described herein, and as alleged in paragraphs 23–92 above, the Petions and NovaTech, and as alleged in paragraphs 115–149 above, Corbett, Dunbar, and Sampson, directly or indirectly, in the offer or sale of securities, by the use of the means or

instruments of transportation or communication in interstate commerce or by use of the mails, have employed a device, scheme, or artifice to defraud.

152.    With regard to the violations of Section 17(a)(1) of the Securities Act, Defendants NovaTech, the Petions, Corbett, Dunbar, and Sampson acted with scienter and engaged in the referenced acts knowingly and/or with severe recklessness.

153.    By reason of the foregoing, Defendants NovaTech, the Petions, Corbett, Dunbar, and Sampson have violated, and unless enjoined will continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### SECOND CLAIM FOR RELIEF

**Violations of Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]**
***(Against NovaTech, the Petions, and Zizi)***

154.    The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

155.    By engaging in the conduct described herein, and as alleged in paragraphs 23–92 above, the Petions and NovaTech, and as alleged in paragraphs 115–123 above, Zizi, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, have obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

156.    With regard to the violations of Section 17(a)(2) of the Securities Act, Defendants NovaTech, the Petions, and Zizi acted at least negligently.

157.     By reason of the foregoing, NovaTech, the Petions, and Zizi have violated, and unless enjoined will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### THIRD CLAIM FOR RELIEF

#### Violations of Section 17(a)(3) of the Securities Act
#### [15 U.S.C. § 77q(a)(3)]

#### *(Against NovaTech, the Petions, Zizi, Corbett, Dunbar, and Sampson)*

158.     The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

159.     By engaging in the conduct described herein, and as alleged in paragraphs 23–92 above, the Petions and NovaTech, and as alleged in paragraphs 115–149 above, Zizi, Corbett, Dunbar, and Sampson, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, have engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

160.     With regard to the violations of Section 17(a)(3) of the Securities Act, Defendants NovaTech, the Petions, Zizi, Corbett, Dunbar, and Sampson acted at least negligently.

161.     By reason of the foregoing, Defendants NovaTech, the Petions, Zizi, Corbett, Dunbar, and Sampson have violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

### FOURTH CLAIM FOR RELIEF

#### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
#### and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)]

#### *(Against NovaTech, the Petions, Corbett, Dunbar, and Sampson)*

162.    The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

163.    By engaging in the conduct described herein, and as alleged in paragraphs 23–92 above, NovaTech and the Petions, and as alleged in paragraphs 115–149 above, Corbett, Dunbar, and Sampson, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange:

- employed a device, scheme, or artifice to defraud; and/or

- engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

164.    With regard to the violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder, NovaTech, the Petions, Corbett, Dunbar, and Sampson acted with scienter and engaged in the referenced acts knowingly and/or with severe recklessness.

165.    By reason of the foregoing, NovaTech, the Petions, Corbett, Dunbar, and Sampson have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

### FIFTH CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]**

*(Against NovaTech and the Petions)*

166.    The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

167.    By engaging in the conduct described herein, and as alleged in paragraphs 23–92 above, NovaTech and the Petions, directly or indirectly, singly or in concert with others, in

connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

168.    With regard to the violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, NovaTech and the Petions acted with scienter and engaged in the referenced acts knowingly and/or with severe recklessness.

169.    By reason of the foregoing, NovaTech and the Petions have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

**SIXTH CLAIM FOR RELIEF**

**Unregistered Securities Offerings in Violation of
Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)]**

***(Against all Defendants)***

170.    The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

171.    By engaging in the acts and conduct alleged herein, each of the Defendants, directly or indirectly:

- made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

- for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instrument of

51

transportation, securities as to which no registration statement was in effect; and/or

- made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

172.    By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

**SEVENTH CLAIM FOR RELIEF**

**Unregistered Broker in Violation of
Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]**

*(Against the Promoter Defendants)*

173.    The SEC re-alleges and incorporates paragraphs 1–149 above by reference as if fully set forth hereunder.

174.    At various times during the Relevant Period and as further detailed and alleged in, among other places, paragraphs 93–149 above, each of the Promoter Defendants acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(4)], and made use of the mails or the means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities.

175.    During the Relevant Period and at all relevant times, none of the Promoter Defendants were registered with the SEC as a broker or dealer or as an associated person of a broker or dealer registered with the SEC, in accordance with Section 15(b) of the Exchange Act [15 U.S.C. §78o(b)]. Nor did any exemption from the broker registration requirements exist with

respect to the securities, transactions, and/or any Defendants' conduct alleged and described herein.

176.     By engaging in the conduct described above, each of the Promoter Defendants have violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## VI.     <u>PRAYER FOR RELIEF</u>

177.     WHEREFORE, the SEC respectfully requests that this Court enter a Final Judgment:

- Permanently restraining and enjoining NovaTech and the Petions from violating, directly or indirectly, Sections 5(a), 5(c), and 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder;

- Permanently restraining and enjoining Corbett, Dunbar, and Sampson from violating, directly or indirectly, Sections 5(a), 5(c), 17(a)(1), and 17(a)(3) of the Securities Act, Sections 10(b) and 15(a) of the Exchange Act, and Rule 10b-5(a) and (c) thereunder;

- Permanently restraining and enjoining Zizi from violating, directly or indirectly, Sections 5(a), 5(c), 17(a)(2), and 17(a)(3) of the Securities Act and Section 15(a) of the Exchange Act;

- Permanently restraining and enjoining Garofano and Hadley from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act and Section 15(a) of the Exchange Act;

- Permanently restraining and enjoining NovaTech, the Petions, Zizi, Corbett, Sampson, Dunbar, Hadley, and Garofano—directly or indirectly, including but not limited to, through any entity owned or controlled by them—from: (i) offering, operating, or participating in

any marketing or sales program in which the participant is compensated or promised compensation solely or primarily for (A) inducing another person to become a participant in the program; or (B) if such induced person induces another to become a participant in the program; and (ii) participating directly or indirectly in any offering of securities; provided, however, that, such injunction shall not prevent Cynthia Petion, Eddy Petion, Zizi, Corbett, Sampson, Dunbar, Hadley, or Garofano from purchasing or selling securities for their own personal accounts;

- Ordering NovaTech and the Petions to disgorge all ill-gotten gains received as a result of the violations alleged herein, together with pre-judgment interest thereon, on a joint and several basis by and between NovaTech, Cynthia Petion, and Eddy Petion, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

- Ordering each Promoter Defendant to disgorge all ill-gotten gains he or she received as a result of the violations alleged herein, together with pre-judgment interest thereon, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act;

- Ordering each Defendant to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

- Granting such other and further relief as this Court may deem appropriate, just, equitable, and/or necessary.

## VII.   JURY DEMAND

178.   The SEC demands trial by jury in this action on all issues so triable.

Dated: August 12, 2024                    Respectfully submitted,


*/s/ Patrick Disbennett*
Patrick Disbennett
S.D. Fla. Special Bar ID A5503234
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: (817) 266-9633 (Disbennett)
disbennettpa@sec.gov

*Attorney for Plaintiff*