**United States District Court**
**Southern District of Florida**

Securities and Exchange Commission,

Plaintiff,

v. Civ. Action No. 1:24-cv-23058

Nova Tech Ltd, Cynthia Petion, Eddy Petion, Martin Zizi, James Corbett, Corrie Sampson, Dapilinu Dunbar, John Garofano, Marsha Hadley,

Defendants.

______________________________/

**John Garofano's and Marsha Hadley's Motion to Dismiss Causes of Action Six and Seven of the Complaint as to Them and Incorporated Memorandum of Law**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants John Garofano and Marsha Hadley respectfully move on the following grounds to dismiss the complaint in this case. In support of this Motion, both Defendants state as follows:

## I. Introduction

The Complaint in this case alleges that, between January 2019 and January 2024, NovaTech and its founders, Cynthia and Eddy Petion, operated a fraudulent multi-level marketing ("MLM") pyramid scheme in which they solicited investments from members of the public by falsely promising guaranteed returns of 3% per week through cryptocurrency and forex trading. ECF 1, ¶¶ 1, 93–98, 220–

23. The Complaint alleges that the scheme was, essentially, a Ponzi scheme, in which early investors were paid with funds from later investors rather than from actual trading profits, and that the scheme collapsed when NovaTech ceased making payments and blocked investor accounts. ECF 1, ¶¶ 93, 98.

The Complaint names several defendants beyond the Petions, including various "promoters" and "senior directors" who allegedly recruited investors into the scheme through public meetings, Zoom calls, social media, and other promotional activities. ECF 1, ¶¶ 44-45, 101-136). Although Garofano and Hadley were two of the Petions' victims, the Complaint seeks to hold them strictly liable for securities-registration violations based on their alleged roles in marketing NovaTech investments. The Complaint does not allege that Garofano and Hadley had any ownership interest in NovaTech, role in its management, access to its financial records or business plans, or authority to bind NovaTech or control investor funds. Nor does it contend that they structured the investment program, drafted offering documents, processed investor payments, or had any role in the mechanics of the offering. The facts alleged, if proven, would establish only that they were downstream participants in an MLM structure created and controlled entirely by NovaTech and the Petions.

Moreover, as to Garofano and Hadley, the Complaint relies entirely on conclusory group pleading, guilt by association, and speculative inferences drawn

from the titles conferred on them by the Petions. The Complaint fails to allege any specific conduct by Hadley, and, as to both her and Garofano, it fails to plausibly allege that either was a statutory "seller" or "offerer" under Section 5 of the Securities Act or an unregistered broker under Section 15(a) of the Exchange Act. It also constitutes an impermissible "shotgun pleading" that fails to provide fair notice of the claims against each individual defendant.

For these reasons, Causes of Action Six and Seven of the Complaint should be dismissed as to Hadley and Garofano.

## II. Incorporated Memorandum of Law

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Similarly, courts need not accept as true allegations that are merely "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action. *Id*.

The Complaint here fails to allege sufficient actions of either Garofano or Hadley from which this Court may draw a reasonable inference that they violated securities-registration requirements.

### B. The Complaint Must Be Dismissed as an Impermissible Shotgun Pleading.

As an initial matter, the SEC's Complaint must be dismissed because it relies on impermissible shotgun pleading and thereby fails to provide defendants Garofano and Hadley "adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has repeatedly condemned shotgun pleadings and, in appropriate cases, has directed district courts to dismiss them sua sponte. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014).

Here, the Sixth and Seventh Claims for Relief each incorporate by reference the entirety of the Complaint's first 149 paragraphs — most of which have nothing to do with Garofano or Hadley — and then assert in conclusory fashion that "each of the Defendants" violated the relevant statutory provisions. ECF 1, ¶¶ 170–171, 173–175. This boilerplate approach merely parrots the statutory language without identifying what Garofano or Hadley actually did to constitute an "offer," "sale," or act of "brokerage."

The deficiency is laid bare by comparing the Complaint's treatment of the various "Promoter Defendants." The Complaint devotes multiple detailed paragraphs to defendant Zizi's alleged role in creating promotional materials, hosting weekly training sessions, and making specific misrepresentations to identified categories of investors. ECF 1, ¶¶ 97–100, 116–123. It similarly details defendant Corbett's hosting of promotional events and his specific statements to investors. ECF 1, ¶¶ 101–02, 124–135. And it provides extensive detail about defendants Dunbar's and Sampson's alleged roles in founding "Team Diamond" and making specific representations to investors in the face of known red flags. ECF 1, ¶¶ 105–08, 136–149.

By contrast, the allegations against Garofano span a mere two paragraphs and amount to little more than: (1) he held the rank of Two Star Ambassador; (2) he was a member of Team Diamond; (3) he "directly solicited and sponsored at least 12 investors"; and (4) he appeared in a single promotional video on July 2, 2022. ECF 1, ¶¶ 103–04. The Complaint provides no details about these alleged solicitations — no dates, no specific statements to identified investors, and no explanation of what role, if any, Garofano played beyond appearing in a promotional video that described NovaTech's publicly marketed features.

The allegations against Hadley are even more devoid of detail. The Complaint alleges only that: (1) she held the rank of One Star Ambassador; (2) she co-founded

Team Diamond with Sampson; (3) "on information and belief, she directly solicited and sponsored investors"; and (4) she appeared in a single promotional video on February 21, 2022. ECF 1, ¶¶ 109–10. The phrase "on information and belief" is particularly telling — it concedes that the SEC lacks actual knowledge of Hadley's solicitation activities and is instead speculating based on her rank. Allegations on information and belief survive a motion to dismiss only when the complaint also alleges specific facts that make the inference of liability plausible, not merely possible. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). No such facts are alleged here.

Such undifferentiated group pleading, specific as to some defendants but conclusory as to others, is precisely what the Eleventh Circuit has repeatedly condemned. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (dismissing complaint where allegations were "not connected to a particular Defendant or set of Defendants, making it impossible to understand who did what"). The Complaint here fails this test: it does not identify which investors Garofano or Hadley allegedly solicited, what specific statements they made to those investors, when the solicitations occurred, or how their conduct differed from that of ordinary investors who shared their positive experiences with friends and family. *See Anderson v. District Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Accordingly, Counts Six and Seven should be dismissed as to both Garofano and Hadley on shotgun-pleading grounds alone.

**C. The Complaint Fails to Plausibly Allege that Either Garofano or Hadley Violated Section 5(a) and 5(c) of the Securities Act of 1933.**

The Complaint's Sixth Claim for Relief alleges that Garofano, Hadley, and others violated Sections 5(a) and 5(c) of the Securities Act of 1933. Those provisions prohibit the offer or sale of securities in interstate commerce unless a registration statement is in effect or an exemption applies. To establish a violation, the SEC must show that (1) no registration statement was filed or in effect; (2) the defendant directly or indirectly offered to sell or sold the securities; and (3) interstate means were used in connection with the offer or sale. *SEC v. Calvo*, 378 F.3d 1211, 1214–15 (11th Cir. 2004).

The Complaint fails to plausibly allege facts that could satisfy the second element as to either defendant.

**i. The Complaint's Own Allegations Establish That All Investment Transactions Were Conducted Exclusively Through NovaTech's Infrastructure, Not Through Garofano or Hadley.**

A threshold problem with the SEC's theory is that the Complaint's own factual allegations foreclose the conclusion that Garofano or Hadley "offered" or "sold" securities within the meaning of Section 5. The term "seller" for Section 5 purposes encompasses not just the person who passes title to a security, but also one who

"successfully solicits the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Critically, *Pinter* requires a nexus between the alleged solicitation and a completed transaction — a solicitor who fails to induce a purchase is not a "seller" under Section 5. *Id.* at 644–45.

The Complaint here alleges no such nexus. It acknowledges that all investment transactions were conducted through NovaTech's website and payment processor: investors created accounts online, received unique wallet addresses from NovaTech's automated system, and deposited crypto assets directly into accounts controlled by the Petions. ECF 1, ¶¶ 30–33. The Petions — not Garofano or Hadley — controlled the website, the back office, the payment processor, and all account infrastructure. ECF 1, ¶¶ 29–33. Neither Garofano nor Hadley had any ability to accept an offer to purchase a security, to process a subscription, to direct investor payments, or to issue any interest in NovaTech's program. The Complaint attributes all of those functions exclusively to NovaTech and the Petions. *See* ECF 1, ¶¶ 29–33, 41.

The absence of any alleged nexus between a specific solicitation by Garofano or Hadley and a completed transaction is fatal to the SEC's Section 5 claim. To establish a Section 5 violation, the SEC must prove that the defendant was a "necessary participant" or "substantial factor" in an illicit sale. *Calvo*, 378 F.3d at

1214. Given that NovaTech raised more than $650 million from over 200,000 investors through a fully automated online platform that was operational before Garofano or Hadley joined the program, neither can plausibly be described as a "necessary participant" or "substantial factor" in NovaTech's securities distribution. The scheme was designed to function — and did function — without either of them.

**ii. The Complaint Fails to Allege Participation in any Sale of Offer of Sale.**

Section 2(a)(3) of the Securities Act defines "sale" or "sell" to include "every contract of sale or disposition of a security or interest in a security, for value," and "offer to sell" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3). Section 5 targets participants in a securities distribution — not peripheral actors whose conduct does not constitute a solicitation tied to a specific securities transaction. *See SEC v. Chinese Consol. Benevolent Ass'n*, 120 F.2d 738, 741 (2d Cir. 1941).

Here, the Complaint alleges that Garofano and Hadley touted the NovaTech investment to others and received commissions in connection with their MLM activities. It does not, however, tie either of them to any actual, identified securities purchase — which it would have to do to sufficiently allege that they sold securities. *See Calvo*, 378 F.3d at 1214.

It also fails to sufficiently allege that they "offered" securities for sale. The Complaint does not allege that either Garofano or Hadley had any ability to accept an offer to buy, execute a transaction, process a subscription, direct investor payments, handle crypto wallets, control the NovaTech website, have authority over account openings, negotiate investment terms, or play any role in issuing or transferring the alleged securities. Generalized promotional speech — even if compensated — does not automatically constitute an "offer" of securities. Treating compensated promotional speech alone as a Section 5 "offer" would improperly expand a strict-liability statute beyond its intended scope.

At most, the Complaint alleges that Garofano and Hadley encouraged others to invest in NovaTech, just as they had done themselves. The Complaint describes them merely as downstream promoters within an MLM hierarchy who developed "downlines" and received commissions based on group volume — a compensation structure characteristic of MLM programs, not securities distribution. ECF 1, ¶¶ 94–114.

Cause of Action Six should therefore be dismissed as to both Garofano and Hadley.

### D. The Complaint Fails to Plausibly Allege that Either Garofano or Hadley Violated Section 15(a)(1) of the Exchange Act

The Complaint's Seventh Claim for Relief alleges that Garofano, Hadley, and others violated Section 15(a)(1) of the Exchange Act by acting as unregistered

brokers. To state a claim under Section 15(a)(1), the SEC must plausibly allege that each defendant (1) acted as a "broker" or "dealer"; (2) used the mails or instrumentalities of interstate commerce to effect transactions in, or induce the purchase or sale of, securities; and (3) was not registered with the SEC. *See* 15 U.S.C. § 78o(a).

Section 78c defines "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). The Complaint fails to plausibly allege facts that could establish this standard as to either defendant.

**i. The Complaint Fails to Allege That Garofano or Hadley Engaged in Broker Conduct.**

A "broke"r is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4). Courts and the SEC have consistently held that not every person who introduces investors to an investment opportunity is a broker requiring registration. "[C]ases and SEC No-Action letters interpreting the phrase have indicated that regularity of participation is the primary indicia of being 'engaged in the business.'" *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12 (D.D.C. 1998); *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011). Solicitation alone does not transform an individual into a broker where the complaint fails to plausibly allege participation in the execution of securities transactions. *Id.*

Here, the Complaint fails to allege that either Garofano or Hadley: negotiated investment terms on behalf of investors or NovaTech; provided individualized investment advice or suitability analyses; handled investor funds or took custody of securities; executed transactions or opened accounts; bound NovaTech or investors to any agreement; performed due diligence on NovaTech's trading operations; or engaged in any function beyond sharing information about NovaTech in group presentations. The single example offered of Garofano's promotional conduct — the July 2, 2022 video — reflects only general statements about NovaTech's publicly marketed features, not individualized investment advice. ECF 1, ¶ 104. The single example offered of Hadley's conduct — the February 21, 2022 video — similarly reflects only general promotional statements in a group presentation. ECF 1, ¶ 110.

Broker-dealer status requires involvement in "effecting transactions" — participation at "key points in the chain of distribution," such as negotiating terms, analyzing the issuer's financial needs, or executing transactions. *Kramer*, 778 F. Supp. 2d at 1336. The Complaint alleges no such participation by either defendant.

**ii. The Compensation Structure Alleged in the Complaint Is Characteristic of MLM Programs, Not Broker-Dealer Relationships.**

Although transaction-based compensation is a relevant factor in the broker analysis, *see Kramer*, 778 F. Supp. 2d at 1335–36, the compensation structure

described in the Complaint actually undermines the SEC's broker theory rather than supports it.

The Complaint describes NovaTech's "7 ways to get paid" structure: a multi-layered commission system that paid promoters percentages of investments and service fees across up to nine levels of their downlines, plus "fast track" and "rank achievement" bonuses. ECF 1, ¶¶ 112–113. This is residual, volume-based income that accumulates passively across a network — the hallmark of MLM compensation — not transaction-specific compensation tied to the execution of identified securities transactions. The Complaint itself acknowledges that commissions were paid based on "group volume" — the total amount invested by a promoter's downline — not on a per-transaction basis or contingent on the completion of specific securities transactions. ECF 1, ¶¶ 94–114.

True transaction-based compensation — the kind that courts have found relevant to broker status — is compensation "received in exchange for services rendered in connection with a specific securities transaction," such as a commission paid upon closing an identified sale. *See SEC v. Margolin*, 1992 U.S. Dist. LEXIS 14872, at *16 (S.D.N.Y. Sept. 24, 1992). The Complaint alleges no facts showing that Garofano or Hadley received compensation contingent on any specific, identified transaction. At most, the allegations would establish that they received

passive income based on the overall volume of their downline networks — a compensation structure that does not trigger broker-dealer registration requirements.

**iii. Garofano and Hadley Qualify as "Finders" Exempt from Broker-Dealer Registration.**

Not every person who introduces parties to a securities transaction constitutes a "broker" under Section 15(a). The "finder's exception" to the broker-registration requirement permits a person to perform limited introductory activities without registering. "Merely bringing together the parties to transactions, even those involving the purchase and sale of securities, is not enough" to warrant broker registration under Section 15(a). *Kramer*, 778 F. Supp. 2d at 1336. "Rather, the evidence must demonstrate involvement at 'key points in the chain of distribution,' such as participating in the negotiation, analyzing the issuer's financial needs, discussing the details of the transaction, and recommending an investment." *Id.* (quoting *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, 2006 U.S. Dist. LEXIS 68959, at *6 (D. Neb. Sept. 12, 2006)); *see also AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1254 (11th Cir. 2025) (citing *Cornhusker* factors); *SEC v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 305 (S.D.N.Y. 2024).

The following table illustrates how the Complaint's own allegations — even accepted as true — fail to satisfy any of the key *Cornhusker/Kramer* broker factors as to either Garofano or Hadley:

| **Broker-Hallmark Factor** | **Alleged as to Garofano?** | **Alleged as to Hadley?** |
|---|---|---|
| Participated in negotiating investment terms | No | No |
| Analyzed NovaTech's financial needs or trading operations | No | No |
| Provided individualized investment advice or suitability analysis | No | No |
| Handled investor funds or took custody of securities | No | No |
| Executed transactions or opened accounts | No | No |
| Had authority to bind NovaTech or investors | No | No |
| Performed due diligence on NovaTech | No | No |
| Had access to NovaTech's financial records | No | No |
| Received compensation tied to specific identified transactions | No | No |

The Complaint's allegations — even if proven — establish only that Garofano and Hadley introduced investors to NovaTech and made general promotional statements in group settings. These are precisely the limited activities that qualify for the finder's exception. *See Hutner v. Greene*, 734 F.2d 896, 901 (2d Cir. 1984) ("The distinction between the finder and the broker frequently turns upon whether

the intermediary has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations.”).

Accordingly, Count Seven should be dismissed as to both Garofano and Hadley.

**E. The Complaint’s Allegations Against Hadley are Fatally Sparse.**

While the foregoing arguments apply with equal force to both defendants, the case for dismissal is especially strong as to Hadley, whose alleged conduct is so sparse and inferential that it fails to state a claim under any of the applicable standards.

The Complaint’s factual allegations against Hadley reduce to four items: (1) she held the rank of One Star Ambassador; (2) she co-founded Team Diamond with Sampson; (3) on information and belief, she solicited investors; and (4) she appeared in one promotional video. ECF 1, ¶¶ 109–10. None of these allegations, individually or collectively, states a plausible claim.

First, Hadley’s rank is not itself a predicate act — it is a title assigned by NovaTech based on the aggregate investment activity of her downline, not direct proof of any particular solicitation. The SEC’s contention that Hadley’s rank “implies” a $50 million downline (ECF 1, ¶ 109) is circular: the rank is derived from the very conduct the SEC is trying to allege, and inferring liability from a title rather than from specific acts is precisely the type of reasoning *Iqbal* forbids.

Second, co-founding the "Team Diamond" brand is an organizational fact, not an act of solicitation. The Complaint nowhere alleges that Hadley personally solicited any identified investor, made any identified misrepresentation, or participated in any identified securities transaction. The named investor in the Complaint whom Hadley allegedly recruited — Dunbar — later became a promoter himself, and even that allegation is made only "on information and belief." ECF 1, ¶ 107.

Third, Hadley's appearance in a single group promotional video does not establish that she solicited any particular investor or "offered" or "sold" any security. The statements attributed to her in that video — describing NovaTech's publicly marketed features — are no different in kind from what any satisfied investor might say about a product they believed in.

The Complaint does not allege how many investors Hadley personally solicited; what specific investment advice, if any, she provided to individual investors; whether she participated in any negotiations; whether she handled customer funds; or the extent of her involvement in effecting any securities transaction. These omissions are not curable by inference. The SEC had the benefit of an investigation prior to filing, including access to testimony, blockchain data, and platform records. ECF 1, ¶ 57. If it cannot allege specific facts as to Hadley after

that investigation, the inference is that no such facts exist. *See Twombly*, 550 U.S. at 559.

### F. The Strict Liability Nature of Section 5, Combined with the SEC's Own Characterization of Garofano and Hadley as Victims, Limits Available Remedies Even If the Claims Survive.

Even if this Court were to find that the Complaint states a technically sufficient Section 5 claim, the SEC's prayer for disgorgement and civil penalties as to Garofano and Hadley warrants careful scrutiny. The Supreme Court has held that disgorgement in SEC enforcement actions is an equitable remedy limited to "a wrongdoer's net profits from the wrongdoing." *Liu v. SEC*, 591 U.S. 71, 75 (2020). The Complaint acknowledges that Garofano and Hadley were themselves investors in NovaTech who were deceived by the Petions. ECF 1, ¶¶ 103, 109. Their "commissions" were credits issued by the very scheme that defrauded them, and any amounts withdrawn were offset by their own capital losses. The SEC must, at minimum, be required to plead specific facts supporting a net-profits disgorgement theory before proceeding to discovery on remedies.

## III. Conclusion

For all of the foregoing reasons, Garofano and Hadley respectfully request that this Court dismiss Causes of Action Six and Seven of the Complaint as to them, with prejudice, for failure to state a claim upon which relief may be granted. The Complaint's group pleading fails to provide constitutionally adequate notice of what

either defendant did wrong. Its own factual allegations foreclose the conclusion that either defendant "offered" or "sold" securities or acted as a broker under the applicable legal standards. And its allegations as to Hadley are so sparse and inferential as to amount to no pleading at all.

Dated: March 27, 2026

Respectfully Submitted,

By: /s/ *Linda Julin McNamara*

Linda Julin McNamara
Florida Bar Number 714887
Oberheiden P.C.
13155 Noel Road, Suite 900
Dallas, Texas 75240
(813)784-7921 (telephone)
(972) 559-3365 (facsimile)
linda@federal-lawyer.com

Attorney for Defendants
John Garofano and
Marsha Hadley

**Certificate of Service**

I hereby certify that on March 27, 2026, a true and correct copy of the above and foregoing instrument was served on all counsel of record via CM-ECF filing.

/s/ *Linda Julin McNamara*
Linda Julin McNamara