**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-23058-CIV-ALTONAGA/Reid**

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

NOVA TECH LTD., *et al*.,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, John Garofano and Marsha Hadley's

Motion to Dismiss Causes of Action Six and Seven of the Complaint as to Them . . . [ECF No.

74], filed March 27, 2026.  Plaintiff, the Securities and Exchange Commission filed a Response

[ECF No. 92]; to which Defendants filed a Reply [ECF No. 99].  For the following reasons, the

Motion is denied.

### I.  BACKGROUND

This case centers on a fraudulent crypto-trading investment and pyramid scheme.  (*See*

*generally* Compl. [ECF No. 1]).  According to the Complaint, Defendants, Cynthia Petion and

Eddy Petion ("the Petions"), primarily through their company NovaTech, used a multi-level

marketing structure to raise more than $650 million in crypto assets from over 200,000 investors.

(*See id.* ¶ 1).  NovaTech claimed it pooled investors' crypto assets, traded them in the crypto asset

and foreign currency markets, and paid investors weekly returns from trading activity.  (*See id.* ¶¶

2, 28, 30).  Despite never reporting a weekly trading loss and claiming weekly average returns of

2–3%, NovaTech "traded only a fraction of investor assets," "suffered significant trading losses,"

and "had no other known sources of revenue besides investor deposits." (*Id.* ¶ 3). NovaTech therefore depended on "the recruitment of new investors or new investments from existing investors to fund its enterprise." (*Id.*; *see also id.* ¶¶ 44, 46).

Plaintiff identifies Defendants, Martin Zizi, James Corbett, Corrie Sampson, Dapilinu Dunbar, John Garofano, and Marsha Hadley as "Promoter Defendants" who played a critical role in distributing the NovaTech investment offering by recruiting, developing, and maintaining a wide network of "downline" investors. (*See id.* ¶¶ 6–7, 93, 96). In addition to commissions for recruiting investors, the Promoter Defendants earned rank achievement bonuses based on their status in NovaTech's MLM program. (*See id.* ¶¶ 7, 46, 95). NovaTech's MLM program had nine ranks. (*See id.* ¶ 95). An individual's rank depended in part on "group volume," which referred to the amount of assets the promoter's downline invested, contributed, or transferred to NovaTech. (*See id.* ¶ 95 n.1). Two Star Ambassadors — the highest rank — required a group volume of $100 million, while One-Star Ambassadors required a group volume of $50 million. (*See id.* ¶ 95).

NovaTech's business model ultimately proved unsustainable. In October 2022, investors began experiencing delays in withdrawing their crypto assets and regulators in the United States and Canada began scrutinizing the company. (*See id.* ¶¶ 51–52). On February 5, 2023, NovaTech imposed a 60-day temporary freeze on all investor withdrawals from trading accounts. (*See id.* ¶ 54). The day before the freeze was set to lift, Cynthia Petion implemented new compensation and withdrawal plans that "severely restricted" the frequency and amount of withdrawals from investors' trading accounts. (*Id.* ¶ 55). In May 2023, NovaTech announced it was halting U.S. operations and shortly thereafter disabled its website, preventing investors from withdrawing funds from their NovaTech accounts and causing substantial losses. (*See id.* ¶ 56).

2

Plaintiff asserts seven claims under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). (*See id.* ¶¶ 150–76). In Counts I and III, Plaintiff alleges NovaTech, the Petions, Corbett, Dunbar, and Sampson violated Sections 17(a)(1) and (3) of the Securities Act, 15 U.S.C. sections 77q(a)(1), (3). (*See id.* ¶¶ 150–153, 158–161). In Count II, Plaintiff alleges NovaTech, the Petions, and Zizi violated Section 17(a)(2) of the Securities Act, 15 U.S.C. section 77q(a)(2). (*See id.* ¶¶ 154–57). In Counts IV and V, Plaintiff alleges NovaTech, the Petions, Corbett, Sampson, and Dunbar violated Section 10(b) of the Exchange Act, 15 U.S.C. section 78j(b) and SEC Rule 10b–5, 17 C.F.R. section 240.10b–5. (*See id.* ¶¶ 162–65, 166–69). In Count VI, Plaintiff alleges all Defendants violated Sections 5(a) and (c) of the Securities Act, 15 U.S.C. sections 77e(a), (c). (*See id.* ¶¶ 170–72). And in Count VII, Plaintiff alleges all Promoter Defendants violated Section 15(a) of the Exchange Act, 15 U.S.C. section 78o(a). (*See id.* ¶¶ 173–76).

Garofano and Hadley move to dismiss Counts VI and VII, arguing (1) the Complaint is an impermissible shotgun pleading; and (2) Counts VI and VII fail to state claims for relief under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Mot.; Reply).

## II.  LEGAL STANDARDS

***Shotgun Pleadings.*** Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id.* (alterations added). The rule is designed to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *LaCroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

3

"[A] typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (alteration added). Such a structure makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted). The Eleventh Circuit routinely condemns shotgun pleadings. *See Real Est. Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

***Motion to Dismiss.*** "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard[,]" a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alterations added; citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take

4

the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.  DISCUSSION

#### A.  Shotgun Pleading

Garofano and Hadley first argue the Complaint is an impermissible shotgun pleading. (*See* Mot. 4–7).[1]  It is not.

The Eleventh Circuit condemns shotgun pleadings because they obscure which facts support which claims and thereby deny defendants fair notice of the claims asserted against them. *See Weiland*, 792 F.3d at 1323.  That is not the case here.  Plaintiff pleads each of its seven Counts separately, limits each Count to a single theory of liability, delineates which Defendants are subject to each Count, and supports each Count with factual allegations tied to the relevant claim. (*See* Compl. ¶¶ 150–76).  The Complaint also identifies Garofano and Hadley as promoters of NovaTech who achieved rank status and describes their conduct with sufficient detail to place them on notice of the claims against them. (*See id.* ¶¶ 21–22, 47–48, 103–104, 109–110).  Plaintiff likewise distinguishes Garofano and Hadley from the other Promoter Defendants where appropriate. (*See id.* ¶¶ 8–9, 115).

Garofano and Hadley nevertheless argue that the allegations against them are less detailed than the allegations against the other Promoter Defendants. (*See* Mot. 4–6).  Although true, the distinction is unsurprising because Plaintiff asserts securities fraud claims against other Promoter Defendants and such claims are subject to Rule 9(b)'s heightened pleading standard. *See Eli Lilly and Co. v. Tyco Integrated Sec., LLC*, No. 13-80371-Civ, 2015 WL 11251732, at *3 (S.D. Fla.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

CASE NO. 24-23058-CIV-ALTONAGA/Reid

Feb. 10, 2015) ("[S]o-called 'nonfraud' securities law violations — claims which do not require proof of fraud or scienter — need not be pled with particularity." (alteration added; citation omitted)); (*see also* Resp. 14–15).

By contrast, the only claims asserted against Garofano and Hadley arise under Section 5 of the Securities Act and Section 15 of the Exchange Act. (*See generally* Compl.). "Neither negligence nor scienter is an element of a prima facie case under Section 5 of the Securities Act[,]" *SEC v. Friendly Power Co., LLC*, 49 F. Supp. 2d 1363, 1367–8 (S.D. Fla. 1999) (alteration added; citation omitted), and "[i]t is undisputed that section 15(a) of the Exchange Act does not contain a scienter element[,]" *SEC v. Ibrahim Almagarby*, 92 F.4th 1306, 1322 (11th Cir. 2024) (alterations added; citation omitted).

Counts VI and VII are governed by Rule 8, and the Complaint easily satisfies that standard.

## B. Sufficiency of the Claims

***Count VI***: "Section 5 of the Securities Act prohibits the use of any means of interstate commerce or the mails to offer to sell or offer to buy any security without having first filed a registration statement with the SEC as to such security." *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017) (citing 15 U.S.C. § 77e(a), (c)). To assert a prima facie case under Section 5, Plaintiff must show: (1) no registration statement was in effect as to the securities; (2) the defendant sold or offered to sell the securities; and (3) interstate transportation, communication, or the mails were used in connection with the sale or offer. *See id.* (citation omitted). To establish that Defendants directly or indirectly sold securities, Plaintiff must allege Defendants were "'necessary participant[s]'" or "'substantial factor[s]' in the offering or selling of the unregistered securities." *Friendly Power*, 49 F. Supp. 2d at 1372 (alterations added; quoting *SEC v. Holschuh*, 694 F.2d 130, 139 (7th Cir. 1982); other citation omitted).

Garofano and Hadley dispute the second element, arguing Plaintiff fails to allege they were sellers of NovaTech securities. (*See* Mot. 7–8). They contend Plaintiff fails to allege a sufficient nexus between their solicitations and any completed transaction because they did not "control[] the website, the back office, the payment processor, and all account infrastructure." (*Id.* 8 (alteration added; citing Compl. ¶¶ 30–33)). They further argue they were not necessary participants or substantial factors in NovaTech's securities sales because the transactions occurred through a fully automated online platform that functioned without them. (*See id.* 9). According to Plaintiff, the Complaint adequately alleges Garofano and Hadley, as top promoters, sold or offered to sell securities by marketing NovaTech to investors and recruiting and maintaining extensive downline networks. (*See* Resp. 18).

Accepting the Complaint's well-pleaded allegations as true, the Court concludes Plaintiff adequately alleges Garofano and Hadley were necessary participants and substantial factors in the sale of unregistered securities. Plaintiff alleges NovaTech operated as a pyramid scheme with no known source of revenue other than investor deposits and "depended on the recruitment of new investors or new investments" to sustain the enterprise. (Compl. ¶ 3). Garofano and Hadley's argument that NovaTech operated through a fully automated platform ignores Plaintiff's allegations that NovaTech's MLM program was designed to solicit prospective investors and "relied on and incentivized a wide network of promoters to recruit new investors." (*Id.* ¶ 46; *see also* Reply 5–6). NovaTech's top promoters were therefore integral to NovaTech's operation.

Plaintiff alleges Hadley and Garofano were among NovaTech's top promoters and, as One Star and Two Star Ambassadors, maintained downlines containing $50 million and $100 million in crypto assets, respectively. (*See id.* ¶ 95). Garofano "directly solicited and sponsored at least 12 investors" and "aggressively promoted NovaTech and recruited investors through weekly Zoom

meetings[,]" where he answered investor questions through Q&A sessions. (*Id.* ¶ 103 (alteration added)). Likewise, Hadley co-founded Team Diamond — "one of the most successful NovaTech promotional groups" — which contained more than 50,000 investors. (*Id.* ¶¶ 19, 109).[2] She used "Zoom, Telegram, WhatsApp, and YouTube to aggressively promote NovaTech and recruit investors" and conducted at least one video presentation to investors and prospective investors alongside her Team Diamond co-founder. (*Id.* ¶ 109; *see also id.* ¶ 110); *see SEC v. Westhead*, 733 F. Supp. 3d 1284, 1308 (S.D. Fla. 2024) (concluding the SEC adequately alleged the defendant was a substantial factor in the sale of securities where she promoted the company's track record, distributed misleading offering materials to investors, and created a vehicle through which investors could participate in the offering).

Taking these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes Plaintiff adequately alleges Garofano and Hadley were substantial factors in the sale of NovaTech securities.

***Count VII:*** Garofano and Hadley next argue they are not "brokers" under the Exchange Act. (Mot. 11–16; Reply 7–10). Section 15(a) of the Exchange Act prohibits brokers from using interstate commerce to effect securities transactions or induce others to buy or sell securities unless registered with the Commission under Section 15(b). 15 U.S.C. § 78o(a), (b). The Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." *Id.* § 78c(a)(4). To determine whether a defendant is a broker, courts consider

---

[2] Hadley argues that Plaintiff impermissibly pleads "on information and belief." (Mot. 6). "'Information and belief' pleading can sometimes survive a motion to dismiss" if the plaintiff "allege[s] specific facts sufficient to support a claim. *Scott v. Experian Inf. Sols., Inc.*, No. 18-cv-60178, 2018 WL 2260754, at *6 (S.D. Fla. June 29, 2018) (alteration added; citing *Zhejiang Dunshen Necktie Co. v. Blue Med, Inc.*, No. 16-24679, 2017 WL 4119604, at *6 (S.D. Fla. Sept. 18, 2017)). Plaintiff has alleged sufficient facts to support a claim through Hadley's rank status, participation in the video presentation, and status as co-founder of Team Diamond. (*See* Compl. ¶¶ 109–10).

"whether the person (1) works as an employee of the issuer, (2) receives a commission rather than a salary, (3) sells or earlier sold the securities of another issuer, (4) participates in negotiations between the issuer and an investor, (5) provides either advice or a valuation as to the merit of an investment, and (6) actively (rather than passively) finds investors." *Westhead*, 733 F. Supp. 3d at 1305 (citing *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011)). These factors are non-exclusive, and no number must be satisfied. *See Kramer*, 778 F. Supp. 2d at 1334.

Plaintiff adequately alleges Garofano and Hadley acted as brokers. Plaintiff alleges they served as ranked ambassadors in NovaTech's MLM program, solicited existing and prospective investors to invest and/or reinvest in NovaTech, received commissions for recruiting investors, and earned rank achievement bonuses tied to their promoter status. (*See* Compl. ¶¶ 95–96, 104, 109).

Plaintiff also alleges Garofano and Hadley advised investors regarding the merits of the investment. At the conclusion of Garofano's weekly Zoom meetings with prospective investors, he held Q&A sessions and answered investor questions. (*See id.* ¶ 103). In a video presentation uploaded to Vimeo, Garofano represented that NovaTech "provides customers with affordable financial solutions[,]" has [o]ne of the deepest liquidity pools in the industry[,]" and achieved "70–80% profit wins on their trades." (*Id.* (alterations added)). Hadley similarly stated in a video presentation that NovaTech had "no expiration date and no earning caps[,]" investors could "trade as long as [they] want, no repurchase requirements[,]" and investors needed no "knowledge of cryptocurrency or training" because "experts [are] doing everything." (*Id.* ¶ 110 (alterations added)).

Further, Plaintiff alleges both Defendants actively solicited investors. Garofano "market[ed] and promot[ed] NovaTech to investors and prospective investors" and conducted

9

weekly Zoom meetings with prospective investors.  (*Id.* ¶ 21 (alterations added); *see also id.* ¶¶ 48, 103).  Likewise, Hadley co-founded Team Diamond, which held "weekly Zoom presentations to prospective investors" and used multiple platforms "to aggressively promote NovaTech and recruit investors."  (*Id.* ¶ 109; *see also id.* ¶ 107).

Garofano and Hadley's reliance on *Cornhusker Energy Lexington, LLC v. Prospect Street Ventures*, No. 04-cv-586, 2006 WL 2620985 (D. Neb. Sep. 12, 2006), and *Kramer* is misplaced. (*See* Mot. 14–16).  *Cornhusker* identifies other broker considerations, including "analyzing the financial needs of an issuer, recommending or designing financing methods, [and] involvement in negotiations[.]"  *Cornhusker*, 2006 WL 2620985, at *6 (alterations added).  Admittedly, the Complaint does not allege Garofano and Hadley analyzed NovaTech's financial needs, discussed financing methods with investors, or participated in negotiations.  (*See generally* Compl.; *see also* Resp. 23 (arguing "[p]articipation in negotiations is irrelevant because there were no negotiations" and conceding the Complaint "does not allege Garofano's or Hadley's involvement with other issuers" (alteration added))).  But no single factor is dispositive, and viewed holistically, the allegations sufficiently support broker status.

In *Kramer*, following a bench trial, the court found the defendant was not a broker because he solicited only close friends, family, and colleagues; offered generalized opinions about the company; and directed investors to publicly available materials.  *Kramer*, 778. F. Supp. 2d at 1339–1340.  Here, Plaintiff alleges Garofano and Hadley did far more than share generalized opinions or direct acquaintances to NovaTech's website.  (*See generally* Compl. ¶¶ 21, 48, 95–96, 103, 107, 109).

Finally, Garofano and Hadley ask the Court to "careful[ly] scrutin[ize]" Plaintiff's request for disgorgement and civil penalties.  (*See* Mot. 18 (alteration added; citing *Liu v. SEC*, 591 U.S.

71, 75 (2020))).  Notwithstanding any future dispute over the scope or propriety of disgorgement, at the pleading stage, it is premature to determine whether the specific forms of disgorgement are prohibited as a matter of law.  *See, e.g.*, *SEC v. Movie Studio, Inc.*, No. 21-cv-61686, 2023 WL 5805587, at *5 (S.D. Fla. Aug. 18, 2023) (collecting cases), *report and recommendation adopted by* 2023 WL 5786874 (S.D. Fla. Sep. 6, 2023).

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, John Garofano and Marsha Hadley's Motion to Dismiss Causes of Action Six and Seven of the Complaint as to Them . . . **[ECF No. 74]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 8th day of May, 2026.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

11